**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 5 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

STEVEN D. CONNER,

     Plaintiff - Appellant,

v.

SCHNUCK MARKETS, INC.,

     Defendant - Appellee.

No. 95-3408

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 94-2498)**

---

Stephen J. Dennis of Dennis, Stanton & Relingshafer, Fairway, KS, for Plaintiff - Appellant.

Dennis G. Collins of Greensfelder, Hemker & Gale of St. Louis, MO, (Lisa K. Boyer of Greensfelder, Hemker & Gale, St. Louis, MO and J. Nick Badgerow and Gregory L. Ash of Spencer Fane Britt & Browne, Overland Park, KS with him on brief) for Defendant -Appellee.

---

Before **PORFILIO, BARRETT,**[1] and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    [1] Honorable James E. Barrett, Senior Circuit Judge, was unable to attend oral argument. However, Judge Barrett participated fully in the decision of the case.

Plaintiff-Appellant Steven D. Conner ("Conner") appeals the district court's grant of summary judgment to Schnuck Markets, Inc. ("Schnuck") on his retaliatory discharge claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (1994 & Supp. 1997) and the public policy exception to Kansas' at-will employment doctrine. We agree with both the district court's determination that Conner has failed to produce sufficient evidence of retaliatory motive to survive summary judgment on his FLSA claim and its determination that Conner's common law claim is precluded by the availability of statutory relief. Accordingly, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Conner was hired by Schnuck in January, 1991, as a food clerk at one of its Kansas stores. In October, 1992, one of Conner's co-employees reported to Schnuck that she believed that it was not paying overtime in accordance with federal law. After determining that it had violated federal overtime laws, Schnuck distributed surveys that allowed employees to claim any unpaid overtime hours. Conner received a survey but did not return it until he was told that he was required to return the survey before he could receive his overtime back pay. In January of 1993, Conner took his completed survey to Ken Ringkamp, the store manager, claiming unpaid wages. Conner alleges that Ringkamp read the survey

in Conner's presence and said: "Are you sure that you filled this out correctly? . . . If you want to go anywhere with the company, you'll reconsider this."[2] Conner then filled out a new survey, took his paycheck and left.

After his meeting with Ringkamp, Conner alleges a change in the way he was treated on the job. Specifically, Conner claims that Ringkamp became cold toward him, that he and his wife were no longer invited to social functions or company sporting events, that his hours and responsibilities were changed, and that he was not allowed to have lunch with vendors, although other employees were allowed to do so. In March, 1993, two months after Conner turned in his overtime survey, Conner accepted a Tombstone Pizza jacket from a Tombstone Pizza Representative, Mark Leisman. In April, 1993, Conner accepted another jacket from Leisman. The acceptance of gifts or "premiums" from vendors is purportedly prohibited by Schnuck, although Conner claims that he did not know of such a policy and has never known of an employee who was investigated or disciplined for accepting gifts from a vendor. Conner also claims to have seen other employees openly wear items of clothing they had received from vendors,

---

[2]Ringkamp denies that he threatened Conner in this way. However, because we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, see Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996), we assume for the purposes of this appeal that Conner's version of the story is correct.

both inside and outside the workplace, and that he had been to sporting events with other employees who had received tickets to those events from vendors.

Other undisputed evidence points to Conner's knowledge of Schnuck's policy against the acceptance of gifts from vendors, however. Upon the receipt of each of the Tombstone Pizza jackets, Conner told Leisman not to bring the jacket inside the store but to take his keys and put the jacket inside his car. Leisman had earlier tried to bring jackets inside the store, but Ringkamp, the store manager, had ordered Leisman to leave the store upon discovering his purpose. Conner and a co-employee were present at this confrontation, at which time the co-employee said to Conner, "That was a close one," prompting Conner to respond, "No Shit."

Leisman told Ringkamp on May 7, 1993, that he had given jackets to Conner, prompting a meeting between Ringkamp, Conner, and the produce manager on the same day. Conner denied taking the jacket, at which time he was suspended pending an investigation. The investigation yielded written statements from Leisman and one of Conner's co-employees alleging that Conner had, in fact, taken the jackets. On May 12, 1993, Ringkamp asked Conner to meet with him and Schnuck's Loss Prevention Coordinator, Renee Dettmer. Again, Conner was asked about the jackets, and again Conner denied that he had taken the jackets. All told, Conner denied having taken the jackets seven times: twice at the May 7th meeting, and five times at the May 12th meeting. Conner later

admitted to these lies during his April 26, 1995 deposition, claiming he lied to avoid "get[ting] in trouble."

Dettmer referred the Conner matter to her supervisor, Linda Walker, whose office was located in the Schnuck headquarters in St. Louis, Missouri. Ms. Walker recommended to Schnuck's manager of security, Mike Panneri, that Conner be terminated for two reasons: first, for violating the company's policy in accepting gifts from a vendor; and, second, for lying to various company representatives during the subsequent investigation. Ms. Walker noted in support of Schnuck's past policy that a 14 year employee of Schnuck had been discharged in 1988 for accepting beer from a vendor. Conner was then terminated.

Conner subsequently initiated a four-count action, claiming that Schnuck: "(1) breached its promise to pay him overtime compensation for hours he worked in excess of eight hours per day; (2) violated the Fair Labor Standards Act by failing to pay him overtime compensation for hours he worked in excess of 40 hours per week; (3) violated the Fair Labor Standards Act by terminating him for asserting a claim for overtime compensation due him; and (4) also violated state common law by terminating him for asserting such claim."

The first two counts were dismissed with prejudice on February 13, 1996, upon the agreement of the parties to settle, and the last two counts were dismissed as a matter of law on Schnuck's motion for summary judgment. Conner now

appeals the district court's grant of summary judgment to Schnuck. Conner argues that having presented a prima facie case of retaliatory discharge, he should survive summary judgment without presenting any evidence with regard to the employer's articulated reasons for his discharge. In the alternative, Conner argues that he has presented sufficient evidence of pretext to survive summary judgment. We disagree with both of these contentions.

## II. DISCUSSION

A.    FLSA Retaliation Claim.

Section 215(a)(3) of the FLSA provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . . " 29 U.S.C. § 215(a)(3) (1994). The district court determined that Conner failed to produce sufficient evidence to survive summary judgment on his section 215(a)(3) claim. We review the district court's grant of summary judgment de novo, Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

We have held that "[w]hen the 'immediate cause or motivating factor of a discharge is the employee's assertion of statutory rights, the discharge is discriminatory under § 215(a)(3) whether or not other grounds for discharge

exist.'" Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984) (quoting Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181 (8th Cir. 1975)). In a later case, we explained that Love's "motivating factor" test is equivalent to the "but for cause" test, so that "the discharge is unlawful only if it would not have occurred *but for* the retaliatory intent." Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 n.4 (10th Cir. 1992) (emphasis in original). Thus, if a jury finds that a FLSA retaliation plaintiff "would have been terminated regardless of her FLSA activity, then it [is] required to find in favor of the defendants." McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1484 (10th Cir. 1996), cert. denied, 117 S. Ct. 1468 (1997) (citing Reich v. Davis, 50 F.3d 962, 966 (11th Cir. 1995)).

In analyzing FLSA retaliation claims, we apply the shifting burden of proof scheme initially articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Richmond v. Oneok, Inc., ___ F.3d ___, No. 96-6228, 1997 WL 411505, at *2 (10th Cir. July 23, 1997) (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). Under this standard, a plaintiff must first establish a prima facie case of retaliation. Id. The burden then shifts to the employer to offer a legitimate reason for the plaintiff's termination. Id. Once the employer offers such a reason, "the burden then shifts back to the plaintiff to show that 'there is a genuine dispute of material fact as to whether the employer's proffered

reason for the challenged action is pretextual.'" Id. (quoting Morgan, 108 F.3d at 1323).

To establish a prima facie case of FLSA retaliation, a plaintiff must show that: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action. Id. (citing Archuleta v. Colorado Dep't of Insts., 936 F.2d 483, 486 (10th Cir. 1991)). We believe that Conner has satisfied the first two prongs of the prima facie case, and we assume *arguendo* for the purposes of this appeal that Conner has satisfied the third prong.

With regard to the first prong, protected activity, we note that section 15(a)(3) of the FLSA, by its terms, only protects employees who have "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3) (1994). We have not read section 15(a)(3) literally, however, so that even the "unofficial assertion of rights through complaints at work" is protected. Love v. RE/MAX of Am., Inc., 738 F.2d 383, 387 (10th Cir. 1984) (finding that an employee's request for a raise pursuant to the Equal Pay Act was protected activity).

In this case, Conner claimed that he was owed overtime wages under the FLSA's wage and overtime provisions, and we believe these requests involve the "unofficial assertion of rights through complaints at work." Id.  In McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996), cert. denied, 117 S. Ct. 1468 (1997), we held that a plaintiff who had lodged complaints about wage and hour practices had not engaged in protected activity, id., at 1486-87; however, Conner's claim is distinguishable from the one at issue in McKenzie.  In McKenzie, the plaintiff was employed as a personnel director who "never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company." Id. at 1486.  In this case, Conner has no management responsibilities regarding the calculation of overtime wages, and, therefore, Conner's request for overtime wages was "adverse to the company" and was a "personal complaint about the wage and hour practices of [his] employer." Id.

We also believe that Conner satisfied the second prong of the prima facie case because Schnuck terminated Conner subsequent to Conner's participation in the wage survey.  Finally, we will assume *arguendo* for the purposes of this

appeal that Conner has shown a causal connection between his participation in protected conduct and Schnuck's decision to terminate him.[3]

We have held that "[t]he causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Burrus v. United Tel. Co. of Kan., Inc., 683 F.2d 339, 343 (10th Cir. 1982) (citing Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2d Cir. 1980); Womack v. Munson, 619 F.2d 1292, 1296 & n.6 (8th Cir. 1980)). In this case, however, the four month time lag between Conner's participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation. Compare Richmond, 1997 WL 411505, at *3 (a "three-month period between the [protected] activity and termination, standing alone, does not establish a causal connection") with Love v. RE/MAX of Am., Inc., 738 F.2d 383, 386 (1984) (a two-hour gap between protected conduct and adverse employment action was sufficient to satisfy the causation prong of the prima facie case).

Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere

---

[3]The district court found that, although the evidence was not strong, it was sufficient to establish a prima facie showing of a causal relationship between the protected conduct and the termination, based upon Ringkamp's involvement in both events, Ringkamp's alleged change in attitude toward Conner, and all the other circumstances in the case.

temporal proximity to establish causation. For example, in <u>Marx v. Schnuck</u>

<u>Markets</u>, 76 F.3d 324 (10th Cir.), <u>cert. denied</u>, 116 S.Ct. 2552 (1996), we

determined that a plaintiff made a sufficient prima facie showing of causation to

avoid summary judgment when he showed that shortly after filing an FLSA

complaint a pattern of retaliatory conduct began that was apparently related to his

FLSA conduct even though he was not finally terminated until much later. <u>Id.</u> at

329.

In this case, Conner claims to have suffered adverse employment action

before he was terminated. Specifically, Conner testified in his deposition that his

hours were changed to less desirable times some time after he claimed overtime

wages.[4] However, Conner does not relate in his deposition testimony exactly how

soon after he filled out the wage survey that his hours were changed. Thus, the

record is devoid of evidence from which causation can be inferred by the mere

proximity of time. Whether there are sufficient other circumstances to sustain

Conner's burden of proving the causation element of his prima facie case we need

---

[4] Conner also testified that he and his wife were snubbed by his co-workers with regard to after work social events after he filled out his wage survey. However, we do not believe such treatment constitutes adverse employment action within the meaning of our employment retaliation cases. To constitute adverse employment action, the action at issue must relate to the terms and conditions of employment. We decline Conner's invitation to extend the FLSA's reach to the guest lists of those who host social events after work hours.

not decide because the district court opinion can be affirmed on the basis of its holding at the next stage of the McDonnell Douglas analysis that Conner failed to rebut Schnuck's evidence of a non-retaliatory reason for terminating him. Thus, we turn to that step in the analysis.

We have explained that in a retaliation case,

[i]f a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. The defendant need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason. If evidence of a legitimate reason is produced, the plaintiff may still prevail if [he] demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

Burrus, 863 F.2d at 343 (internal citations and quote marks omitted). Thus, once the "defendant carries its burden of producing legitimate, nondiscriminatory reasons for its decision, the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 & n.10 (1981)). We believe the district court correctly applied the shifting burdens framework to Conner's claim.

After the district court determined that Conner had established a prima facie case, the court shifted the burden of production to Schnuck, who was asked

- 12 -

to proffer a legitimate reason for its termination of Conner. Schnuck maintained that it terminated Conner for violating the company's policy against accepting gifts from vendors and for lying to management during the subsequent investigation. After Schnuck met its burden of production, the presumption of discrimination raised by Conner's prima facie case was dropped from the case in accordance with the Supreme Court's holding in <u>Burdine</u>, 450 U.S. at 255 & n.10.

Consequently, to avoid summary judgment at this stage in the process, Conner was required to produce evidence that his discharge was in retaliation for his protected FLSA activity, either through the use of direct evidence or by showing that Schnuck's proffered non-retaliatory reasons for terminating him were pretextual. <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451-53 (10th Cir. 1995). Conner asserts that he has no obligation to produce such evidence at the summary judgment stage, arguing that "having presented a <u>prima facie</u> case, [he] should have been permitted to present his case to the finder of fact." (Aplt. Brief at 22). Conner relies on the following quote from <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993), for the proposition that he has no obligation to rebut Schnuck's proffered reasons at the summary judgment stage because the jury might simply disbelieve Schnuck's proffered reasons at trial: "The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the

prima facie case, suffice to show intentional discrimination." Id. at 511. We

disagree with this interpretation of Hicks.

Conner's argument ignores the fact that after the defendant has carried its

burden of production by offering a legitimate, non-discriminatory reason for its

actions, "the presumption [of discriminatory motive] . . . simply drops out of the

picture." Id. at 510-11. Thus, at the third stage of the McDonnell Douglas

analysis, a discrimination case looks like any other civil case where the plaintiff

"at all times bears the ultimate burden of persuasion." Id. at 511 (internal

punctuation omitted). Accordingly, under ordinary summary judgment principles,

the plaintiff must produce evidence from which a reasonable jury could believe

that the defendant's proffered reason is a false one in order to survive summary

judgment.[5] As one commentator has noted, "[t]he [Hicks] Court did not purport

to limit the availability of summary judgment to either party upon consideration

of all the evidence relevant to pretext . . . . [T]he Court stressed in Hicks that

---

[5] Of course, evidence bearing upon the falsity of the defendant's proffered reason does not have to challenge the proffered reason directly. At the third stage of McDonnell Douglas, the plaintiff can always produce direct evidence of discriminatory motive, and in this way challenge the truth of the defendant's proffered reason. See EEOC v. Flasher, Co., 986 F.2d 1312, 1317 (10th Cir. 1992) (explaining that at the third stage of McDonnell Douglas, "[t]he plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the discharge was a 'pretext for the sort of discrimination prohibited by [law]'") (quoting McDonnell Douglas, 411 U.S. at 804-05).

- 14 -

once a <u>McDonnell Douglas-Burdine</u> case reaches the pretext stage, it is to be treated like any other civil case." Deborah C. Malamud, <u>The Last Minuet: Disparate Treatment After Hicks</u>, 93 Mich. L. Rev. 2229, 2305 (1995).

Indeed, we have stated in several post-<u>Hicks</u> cases that even though a plaintiff has established a prima facie case, the defendant is entitled to summary judgment unless the plaintiff produces either direct evidence of discrimination or evidence that the defendant's proffered reason for the action taken was pretextual. <u>See</u> e.g., <u>Durham v. Xerox Corp.</u>, 18 F.3d 836, 840 (10th Cir.), <u>cert. denied</u>, 513 U.S. 819 (1994) (granting summary judgment even after plaintiff had established a prima facie case of race discrimination on the grounds that plaintiff had "not offered sufficient evidence to support a finding that [defendant's] stated reason was a pretext for discrimination."); <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451 & n.14 (10th Cir. 1995) (explaining that "it [is] . . . the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual -- i.e., unworthy of belief[,]" and thus, "the defendant would . . . be entitled to summary judgment if plaintiff could not offer evidence tending to show the defendant's innocent explanation for his employment decision was false."); <u>Marx v. Schnuck Markets, Inc.</u>, 76 F.3d 324, 328 (10th Cir.), <u>cert. denied</u>, 116 S.Ct. 2552 (1996) (granting defendant summary judgment on an ADEA claim even though plaintiff had

established a prima facie case on the grounds that plaintiff's pretext evidence did not allow for an inference of age discrimination).[6]

This is not to say that evidence introduced as part of the prima facie case cannot also be used at the pretext stage of the analysis. See Burdine, 450 U.S. at 255 n.10 ("[i]n saying that the presumption drops from the case [at the third stage], we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case.") We

_____

[6] It is noteworthy that every other circuit has also held post-Hicks that a plaintiff cannot survive summary judgment by simply producing a prima facie case of discrimination. These courts hold that a plaintiff must produce either direct evidence of discrimination or evidence that the defendant's proffered reason was pretextual in addition to establishing a prima facie case in order to survive summary judgment. See Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995) (Title VII -- sex discrimination); Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996), cert. denied, 117 S. Ct. 1819 (1997) (§ 1981 and Title VII -- race and sex discrimination); Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994) (Title VII -- national origin discrimination); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (Title VII -- sex discrimination); Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 958 (5th Cir. 1993) (ADEA); Boyd v. Harding Academy of Memphis, Inc., 88 F.3d 410, 414-15 (6th Cir. 1996) (Title VII -- pregnancy discrimination); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124-26 (7th Cir. 1994) (ADEA); Thomas v. Runyon,108 F.3d 957, 960-61 (8th Cir. 1997) (Title VII -- race discrimination); Wallis v. J. R. Simplot Co., 26 F.3d 885, 890-91 (9th Cir. 1994) (Title VII -- retaliatory discharge; ADEA); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) (Title VII -- race discrimination); Cf. Kolstad v. American Dental Ass'n, 108 F.3d 1431, 1437 (D.C. Cir. 1997) (Title VII -- sex discrimination) (denying employer summary judgment after finding that plaintiff "introduced sufficient evidence for the jury to conclude *both* that she had proven a prima facie case of discrimination *and* that [defendant's] proffered reasons were pretextual") (emphasis added).

simply reject Conner's argument that the establishment of a prima facie case is *necessarily* sufficient to survive summary judgment.

Conner next argues that even if rebuttal evidence is needed in the ordinary McDonnell Douglas case, the Marx decision stands for the proposition that in a FLSA retaliation case, a showing of temporal proximity between protected activity and adverse employment action is always sufficient to survive summary judgment. 76 F.3d at 329. We disagree both with the breadth of this argument and the factual predicate as applied to this case.

In Marx, we considered the claim of one of Conner's co-workers, Mr. Marx, who was demoted, transferred, and ultimately terminated by Schnuck Markets after he participated in the very overtime wage survey at issue in this case. Id. at 326-27. Mr. Marx claimed in part that Schnuck took action against him because of his participation in the wage survey, in violation of the FLSA. Id. Schnuck responded with the claim that it demoted and transferred Mr. Marx because he lied about whether he was harassing other employees into completing the wage survey, and that it ultimately fired Mr. Marx when it discovered that Mr. Marx had lied on his employment application. Id. After applying the McDonnell Douglas shifting burden framework to Mr. Marx's FLSA retaliation claim, the district court granted Schnuck summary judgment on the grounds that Mr. Marx "failed to present sufficient evidence to create a question of fact as to

whether defendant's proffered reasons for its actions [were] pretextual." Marx v. Schnuck Markets, Inc., 863 F. Supp. 1489, 1497 (D. Kan. 1994), rev'd, 76 F.3d 324 (10th Cir. 1996).

On appeal, we reversed with regard to Mr. Marx's FLSA retaliation claim. Marx, 76 F.3d at 329. In analyzing Mr. Marx's FLSA claim, we did not address the McDonnell Douglas framework but simply explained that "protected conduct closely followed by adverse action *may* justify an inference of retaliatory motive," and that "[g]ranting plaintiff the benefit of every favorable inference, the pattern of actions taken by defendant precludes summary judgment . . . ." Id. at 329 (emphasis added).        Conner would have us read Marx as holding that protected conduct closely followed by adverse action *always* justifies an inference of retaliatory motive, and thus summary judgment is always inappropriate when temporal proximity is established. We refuse to read Marx in this way. See Burrus, 683 F.2d at 343 (after explaining that a plaintiff may establish the causal connection prong of the prima facie case by temporal proximity, we noted that it was still necessary to allow the defendant the opportunity to articulate a legitimate nondiscriminatory reason for the adverse action, and the plaintiff then still was required to prove actual discrimination); see also Morgan, 108 F.3d at 1324-25 (after noting that the plaintiff established a prima facie case of Family and Medical Leave ACT (FMLA) retaliation by establishing temporal proximity

- 18 -

between protected conduct and adverse employment action, we upheld the district court's grant of summary judgment because plaintiff produced no evidence to rebut the proffered reasons of the employer).[7] Each case turns on its facts, and in this case, we believe that Conner has simply produced insufficient evidence of retaliatory motive or pretext to rebut Schnuck's proffered non-retaliatory reasons for terminating him.

Conner next argues that even if the production of pretext evidence is required in his case, he has presented such evidence. Conner argues that his observation of other employees wearing vendor-given clothes at work belies both the assertion that there is a company policy against accepting gifts and that any such policy is enforced impartially. We disagree. The district court correctly observed that Conner's assertions are "conclusory allegations without specific supporting facts. . . . The plaintiff does not point to any specific instances, nor does he indicate any similarly-situated employee who received vendor premiums with impunity." (Order, at 14-15).

In Durham v. Xerox Corp., 18 F.3d 836, 839-40 (10th Cir. 1994), cert. denied, 513 U.S. 819 (1994), we explained that mere allegations of impartial

---

[7] Accord Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (granting defendant summary judgment despite plaintiff's ability to show temporal proximity evidence because pretext evidence was lacking); Cross v. Bally's Health & Tennis Corp., 945 F. Supp. 883, 889 (D. Md. 1996) (same).

treatment are not sufficient to survive summary judgment. Here, although Conner claims that *he* knew of other employees who accepted gifts from vendors without detection, he has neither claimed, nor produced any evidence showing, that *Schnuck* knew of other employees who accepted gifts.

Further, Conner has not presented any evidence showing that Schnuck treated other employees differently if they discovered such violations. Indeed, the only evidence presented with regard to this inquiry supports Schnuck, as it consists of Schnuck's showing that it terminated a 14 year employee in 1988 for accepting beer from a beer vendor.

Finally, Conner has not challenged Schnuck's decision to terminate him because of his dishonesty. Indeed, Conner admitted in his deposition that Ringkamp told him that he was willing to forget about the violation of the no-premium policy if Conner would simply admit to having taken the jackets. Conner has not produced any evidence showing that Schnuck's proffered reason of dishonesty was pretextual. We believe that Conner's failure to challenge Schnuck's proffered reason of dishonesty is fatal to Conner's attempt to survive summary judgment. We have explained that a "discharge is unlawful [under § 215(a)(3) of the FLSA] only if it would not have occurred *but for* the retaliatory intent." Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1408 n. 4 (10th Cir. 1992) (emphasis in original). By failing to challenge Schnuck's proffered reason

of dishonesty, Conner has failed to produce evidence indicating that he would not have been terminated *but for* retaliatory intent.

For these reasons, we AFFIRM the district court's grant of summary judgment to Schnuck on Conner's FLSA claim.


B.    Kansas Common Law Claim

In addition to his FLSA claim, Conner asserts a retaliatory discharge claim under the public policy exception to Kansas' employment-at-will doctrine, citing Murphy v. City of Topeka, 630 P.2d 186, 187-88 (Kan. Ct. App. 1981).   The district court dismissed this claim as precluded by the alternative statutory remedy available under the FLSA.  The court relied on Polson v. Davis, 895 F.2d 705 (10th Cir. 1990), where we held the Kansas Supreme Court would not allow a common law cause of action for retaliatory discharge when an adequate statutory remedy exists under Kansas law.  Id. at 709.

Conner claims that the Polson rationale is limited to situations where the plaintiff has an adequate statutory remedy under *state* law, and does not apply to situations where the plaintiff seeks statutory relief under *federal* law.  However, we have expressly held that the Polson rationale extends to plaintiffs seeking to assert a common law cause of action for retaliation when they have a federal statutory right. Masters v. Daniels Int'l Corp., 917 F.2d 455, 457 (10th Cir. 1990).

Moreover, the district court determined that no reasonable jury could find for Conner on a common law retaliation claim because the <u>McDonnell Douglas</u> burden shifting approach is used for state as well as federal retaliatory discharge claims. (citing <u>Huffman v. Ace Elec. Co., Inc.</u>, 883 F. Supp. 1469, 1475 (D. Kan. 1995)).  For the same reasons that Conner fails to survive summary judgment on his FLSA claim if <u>McDonnell Douglas</u> is applied, he would fail to survive summary judgment on his state claim,  even if we were to recognize such a claim. For these reasons, we affirm the district court's grant of summary judgment to Schnuck Markets with respect to Conner's common law retaliation claim.

## CONCLUSION

With respect to Conner's FLSA retaliation claim, we AFFIRM the district court's ruling that Conner failed to produce sufficient evidence of retaliatory motive to survive summary judgment.  With respect to Conner's common law retaliation claim, we AFFIRM the district court's ruling that under Kansas law, a common law retaliation claim is precluded by an adequate statutory remedy.