**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CAROLE RICHMOND,

      Plaintiff-Appellant,

v.

OKLAHOMA UNIVERSITY BOARD
OF REGENTS; OKLAHOMA
UNIVERSITY, d/b/a Oklahoma
University Health Sciences Center,

      Defendants-Appellees.

No. 97-5181
(D.C. No. 96-CV-340-K)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** [*]

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Plaintiff-Appellant Carole Richmond appeals from the district court's order granting summary judgment for the defendants-appellees on her retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  We affirm the judgment of the district court.

Beginning in 1987, the University of Oklahoma (University) employed Richmond as a licensed clinical social worker at the Women's Clinic of the Health Sciences Center at its College of Medicine at Tulsa.  On or about November 1, 1993, Richmond presented a petition to Dean Harold Brooks requesting replacement of a door lock at the Women's Clinic.  On November 16, 1993, the University placed Richmond on administrative leave pending an investigation of the petition.  Two days later, the University terminated her employment. [1]

Richmond asserts that on or before November 16, 1993, she notified the University of her intention to file a complaint with the Health Sciences Center's

_____

[1]    In a memorandum dated November 18, 1993, Drew Accardi of Clinic Administration notified Richmond that her employment was terminated based on her "(1) fail[ure] to follow the appropriate lines of reporting; (2) [false representation of] the facts regarding the issues addressed; (3) [misrepresentation of] the Clinic staff's support; and (4) [undermining of] the ability of the Clinic Administration to address operational issues within the Clinics in an appropriate manner."  Appellant's App. at 94.

affirmative action office, and that she did in fact file such a complaint on November 16. This complaint does not appear in the record.

On December 1, 1993, Richmond filed a grievance with the University concerning her discharge. Pending resolution of her grievance, the University changed her status from "terminated" to "administrative leave without pay." On January 31, 1994, before the grievance procedure was complete, Richmond filed a gender discrimination complaint with the Oklahoma Human Rights Commission.

On April 1, 1994, while Richmond's grievance was still pending, Dean Brooks submitted a proposal for a reduction-in-force (RIF) at the Health Sciences Center to Jay Stein, Senior Vice President and Provost. The RIF plan called for the elimination of all social work positions at the Women's Clinic, including Richmond's position.

On April 4, 1994, the University's grievance committee issued its recommendation to Provost Stein. The committee found that Richmond's termination had not been justified, and recommended that she be reinstated to her former position with lost pay and benefits. The committee further recommended that the University make "every effort to assist Ms. Richmond in relocating within the University." Appellant's App. at 206.

On April 14, 1994, the University sent Richmond a letter indicating that her position had been eliminated, and that her last working day would be May 16,

1994. The next day, April 15, 1994, Provost Stein issued a memorandum formally approving the RIF. On April 27, 1994, Provost Stein adopted the grievance committee finding and ordered Richmond's reinstatement. Richmond was thereafter placed on medical leave due to cancer surgery.

The University terminated Richmond's employment on May 16, 1994, pursuant to the RIF. Believing the University had retaliated against her for complaining of discrimination, she filed this suit.

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In order to show retaliation,

> [a] plaintiff must first establish a prima facie case of retaliation. If a prima facie case is established, then the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff.

Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993) (quotation omitted). To make out a prima facie case of retaliation, a plaintiff must prove: "(1) protected opposition to discrimination or participation in a proceeding arising

-4-

out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action." Id.

The district court found that Richmond failed to satisfy the third element of her prima facie case. Richmond asserted three adverse actions subsequent to her complaint of discrimination: (1) the University's refusal to give effect, after May 16,1994, to the Provost's order directing that she be given all possible assistance in relocating within the University; (2) the University's decision in May 1994 to treat Richmond as an ex-employee rather than giving her short-term disability support after she developed cancer; and (3) the University's failure to allow her to file an untimely grievance regarding its decision to lay her off as part of the RIF. [2] Each of these adverse actions took place in May 1994 or later, nearly six months after Richmond's initial discrimination complaint to the University and nearly four months after she filed her charge with the Oklahoma Human Rights Commission.

The district court found that this span of time, standing alone, indicated insufficient causal connection to support a prima facie case. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (stating, in FLSA retaliation case, that a four month time lag between the plaintiff's participation in

---

[2]    The district court found a fourth possible adverse action: Richmond's termination pursuant to the RIF. Richmond does not assert that the RIF itself was retaliatory, however. See Appellant's App. at 190.

-5-

protected activity and his termination was not, by itself, sufficient to support an inference of causation). It further found that Richmond failed to present any other evidence of a causal connection between her protected activity and the adverse employment actions. Alternatively, the district court found that the University had advanced a legitimate reason for its actions, and that Richmond had failed to show that this reason was pretextual.

We review the district court's order of summary judgment as follows:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a grant of summary judgment de novo, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (quotations and citations omitted).

Richmond acknowledges that there was a four- to six-month delay between the time she filed her discrimination complaints and the alleged adverse actions. She argues, however, that until she was reinstated to employment by Provost

-6-

Stein's directive of April 27, 1994, the University had no opportunity to retaliate against her. "When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997); see also Bowers v. Bethany Med. Ctr., 959 F. Supp. 1385, 1392 (D. Kan. 1997) (finding causation element of prima facie case satisfied despite gap of between one and one-half and two years between protected action and termination, where plaintiff had been absent from work on disability leave during entire period of gap).

Even if we ignore the time period between Richmond's assertion of her rights and her reinstatement, however, she must still establish a causal connection between her protected conduct and an adverse action by the University. We consider first the University's alleged failure to assist her in finding other employment. She states that the University was obligated to notify her of available jobs which she could fill and to help her to obtain those positions. The earliest such position which she specifically identifies is a social work opening at the Oklahoma City campus. [3] This job did not come open until approximately

---

[3]     Connie Gould, the University's director of personnel services, estimated that during the year after Richmond was RIF'd, somewhere between twenty and one hundred positions came open at the University's health sciences center. Richmond contends that the University had a duty to help her find one of these

(continued...)

April 1995, nearly one year after Richmond's reinstatement. A time lapse of one year is too great to draw a causal connection between her protected action and the University's failure to act. See Conner, 121 F.3d at 1395. Richmond's retaliation claim concerning the University's failure to help her find a job fails [4] because she has not demonstrated a causal connection between her assertion of rights and an adverse action. [5]

---

[3](...continued)
jobs. She presented no evidence, however, concerning what any of the jobs were or whether she was qualified to perform them.

[4] Richmond has also failed to establish the second element of her prima facie case. The University's failure to assist her in finding employment does not fit the definition of retaliation for purposes of Title VII. An employer retaliates against an employee when he takes adverse action which affects the employee's "terms and conditions of employment." Conner, 121 F.3d at 1395 n.4. Gratuitous promises do not form part of the terms and conditions of employment. Cf. Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482-84 (4th Cir. 1996) (holding employer's discontinuation of health care benefits furnished gratuitously after termination of plaintiff's employment did not violate ERISA's anti-retaliation provision). The promise to "make every effort" to help Richmond find another job after her termination was vague and gratuitous and did not affect her terms and conditions of employment. We therefore decline to hold that failure to follow through on it after Richmond's departure constituted retaliatory adverse action against her.

[5] Richmond also argues that the district court ignored her initial termination from employment on November 18, 1993, only two days after she filed her discrimination complaint with the University. We agree with the University, however, that Richmond has waived this argument. In her summary judgment brief, Richmond enumerated the acts of retaliation upon which she relied to support her claim. See Appellant's App. at 190-93. She did not mention her initial termination from employment among these acts. We do not consider

(continued...)

Richmond also asserts that the University retaliated against her by failing to provide her with short-term disability benefits after she fell ill with cancer. Although the University's failure to provide benefits occurred soon after her reinstatement, the University provided a legitimate reason for not granting Richmond disability benefits: she never applied for them. Richmond has failed to create a genuine issue of material fact concerning whether this reason was pretextual. Accordingly, we conclude that summary judgment was proper on this assertion of retaliation.

Richmond claims that the University refused her additional time to pursue a grievance against the RIF decision. The University explained that it simply followed its policies, which did not allow it to provide extra time for filing a grievance. Richmond also failed to show that this reason was pretextual. Summary judgment is proper on this assertion of retaliation.

Finally, Richmond complains that the district court denied her motion to strike the University's summary judgment reply brief. She asserts that the University should not have been allowed to submit new evidence with its reply brief. We have reviewed the summary judgment record, and determine that failure to exclude the additional materials was harmless. See Fed. R. Civ. P. 61.

---

[5](...continued)
arguments made for the first time on appeal. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge