**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 29 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TINA POE,

      Plaintiff-Appellant,

v.

SHARI'S MANAGEMENT
CORPORATION, doing business as
Shari's Restaurant,

      Defendant-Appellee.

No. 98-8061
(D.C. No. 98-CV-20-D)
(D. Wyo.)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Tina Poe appeals the district court's grant of summary judgment in favor of her former employer on her claims brought pursuant to Title VII of the Civil Rights Act of 1964. Because plaintiff did not raise a genuine fact issue regarding the existence of a hostile work environment, but did raise a genuine fact issue regarding her termination from work after complaining about an incident of sexual harassment, we affirm in part and reverse in part, and remand the case for further proceedings.

Plaintiff was employed as a baker from November 3, 1996, to November 24, 1996, by defendant Shari's Management Corporation in Cheyenne, Wyoming. Because of day care concerns, plaintiff was permitted to work a three-day schedule. She alleges that on November 19, 1996, the shift supervisor, John Lohman, had an altercation with a waitress regarding her hairnet. According to plaintiff, Lohman then came into the storeroom and said to her: "I have servers for bitches (sic). I have a baker that is a bitch. You are a fucking bitch. I hate working with all these women. Women are nothing but stupid fucking bitches." Appellant's App. at 31. Plaintiff testified she felt threatened by this statement, but acknowledged she might have been overly sensitive at this time due to a problem with her husband.  See id. at 30, 32. Although upset, plaintiff completed baking her pies before going home.

Two days later, plaintiff complained to the manager about Lohman's conduct, informing the manager she would not work during Lohman's shift and that Lohman could bake his own pies. The manager told her she could not dictate with whom she would work, but promised to take care of the incident.

On plaintiff's next scheduled day of work, November 24, 1996, she called the manager to find out if he wanted her to work. The manager told her to come in at that time. Because of some event at home, plaintiff called the manager to ask if she could come in several hours later. The manager told her she needed to report immediately, and that she needed to start working six days a week to maintain pie freshness. When plaintiff informed the manager she was unable to meet this requirement, he told her he would find another baker. Plaintiff testified she then asked the manager whether the new schedule had anything to do with her complaint about Lohman's conduct, to which the manager laughed and said "Whatever. Forget it. I'll find another baker." Id. at 37.

Plaintiff brought this discrimination action against defendant, alleging she had been subjected to a hostile work environment based on her sex, and had been terminated in retaliation for complaining about the harassment. The district court granted summary judgment for defendant, finding that Lohman's conduct did not create a hostile work environment as a matter of law, and that plaintiff's evidence did not show the employer's reasons for her termination were pretextual.

On appeal, plaintiff argues the evidence was sufficient to raise factual issues as to both the hostile work environment issue and the retaliation issue. We review a grant of summary judgment de novo, applying the same standard as the district court. See Siemon v. AT & T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the factual record and the inferences reasonably drawn therefrom in the light most favorable to the party opposing summary judgment. See Siemon, 117 F.3d at 1175.

Sexual harassment is actionable under a hostile work environment theory when the harassing conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (quotations omitted). However, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." Id. The conduct must be both objectively and subjectively abusive. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993).

In Harris, the Court articulated the following nonexhaustive list of factors to be considered in determining whether sexually harassing conduct is sufficiently abusive as to create a hostile work environment: "frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. Here, the incident with Lohman was a single occurrence, resulting from a heated argument with another employee, which did not involve a physical threat to plaintiff, and which did not prevent her from completing her work after it occurred. Although Lohman's conduct was clearly inappropriate, we agree with the district court that it was not so serious or pervasive, in itself, as to create a cause of action for a hostile work environment under Title VII.

We do not agree, however, that plaintiff failed to raise a genuine issue as to whether she was terminated in retaliation for complaining about the incident. A prima facie case of reprisal is made by showing "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997). Upon such a showing, the burden shifts to the defendant to produce a legitimate, nonretaliatory reason for its employment decision. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997). The burden then shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employer's decision, but instead, that the decision

was made for retaliatory reasons.  This burden may be met either by direct evidence of the employer's retaliatory motive or by evidence that the proffered reason is pretextual.   See id. at 1396.

Here, plaintiff made a prima facie case of retaliation by showing that her schedule was changed immediately after she complained about the incident with Lohman.  See id. at 1395 (noting causal connection may be inferred from adverse action following closely after protected activity).  Defendant, in turn, identified a legitimate nonretaliatory reason for changing plaintiff's schedule:  concerns about pie freshness.  The question, then, is whether plaintiff presented sufficient evidence to refute the proffered reason, by showing either defendant's retaliatory motive or that its identified reason was a pretext for retaliation.

"[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive."   Marx v. Schnuck Markets, Inc.   , 76 F.3d 324, 329 (10th Cir. 1996).  Although not a per se rule, such a pattern of conduct can preclude summary judgment despite the employer's articulation of a legitimate reason for its actions.   See Conner, 121 F.3d at 1397-98 (explaining that although temporal proximity between protected activity and subsequent discipline could, as in Marx, rebut an employer's proffered reason and preclude summary judgment, such an analysis had to be made on a case-by-case basis).

Here, the change to plaintiff's schedule was first raised immediately after she engaged in the protected activity, giving rise to an inference of retaliatory motive. This is not a case in which the challenged course of conduct had already commenced before the protected activity took place. Cf. Morgan, 108 F.3d at 1324 (holding temporal proximity insufficient to show pretext when disciplinary action had begun before protected activity and adverse employment decision "simply completed the disciplinary process already set in motion"). Further, although the baker before plaintiff had worked five days a week, the manager imposed a six-day requirement on plaintiff. No attempt was made to accommodate plaintiff's child care needs, despite the manager's willingness to do so prior to plaintiff's harassment complaint.

In addition, there was evidence that the manager was unresponsive to plaintiff's harassment complaint, telling her he "doubt[ed] it very seriously that's the way it happened." Appellant's App. at 35. Although not free from ambiguity, it is significant that the manager did not deny plaintiff's question whether her changed schedule was related to the harassment complaint, but merely laughed and said "whatever," which might be construed as an admission. Based on the foregoing, a reasonable jury could conclude that plaintiff's changed schedule was imposed in retaliation for her complaint about Lohman's conduct, and that the

manager knew that plaintiff would be unable to comply with the new requirements. Summary judgment, therefore, was inappropriate on this issue.

The judgment is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings.

Entered for the Court

Mary Beck Briscoe
Circuit Judge