**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT VIGIL,

      Plaintiff - Appellant,

      v.

COLORADO DEPARTMENT OF
HIGHER EDUCATION,
UNIVERSITY OF COLORADO
HEALTH SCIENCE CENTER,

      Defendant - Appellee.

No. 98-1174
(D. Ct. No. 97-WY-1759-WD)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BARRETT**, and **BRORBY**, Circuit Judges.

Plaintiff Robert Vigil brought this action under Title VII of the Civil Rights

Act of 1964 ("Title VII"), alleging that defendant, Colorado Department of

Higher Education, University of Colorado Health Science Center ("The

University"), terminated him in retaliation for engaging in protected activity. The

United States District Court for the District of Colorado granted summary

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

judgment in favor of defendant and dismissed the case. On appeal, plaintiff argues that the district court erred by: (1) finding that Vigil engaged in protected activity only after disciplinary proceedings had begun; (2) finding that Vigil and Glen Roberts exerted pressure on Jose Garcia and Dick Kovach to falsify overtime reports; (3) finding that Vigil and Roberts were not similarly situated; (4) finding that Vigil and Garcia were not similarly situated; (5) failing to consider certain evidence that allegedly shows that defendant's proffered nonretaliatory reasons for terminating him are pretextual; and (6) relying upon unreviewed findings of a state administrative law judge. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## **Background**

Robert Vigil commenced employment with the University on July 2, 1990. He worked as a telecommunications/electronics specialist and was a certified state employee, which, under Colorado law, means that defendant could only terminate him for just cause and after he had an opportunity to respond to the charges. See Colo. Const. art. XII, §13(8); Colo. Rev. Stat. § 24-50-125; Department of Insts., Div. for Developmental Disabilities, Wheat Ridge Reg'l Ctr. v. Kinchen, 886 P.2d 700, 704 (Colo. 1994) (en banc). Prior to the events forming the basis of this lawsuit, plaintiff had never been disciplined and had received satisfactory job performance evaluations.

On August 22, 1996, defendant scheduled Vigil to work overtime with three co-workers, Jose Garcia, Dick Kovach, and Glen Roberts. On August 26, 1996, Kovach reported that he, along with Vigil, Garcia, and Roberts, submitted inflated overtime reports for work performed on August 22. Based on Kovach's admission, Patrick Hellman, defendant's Director of Communications and Technical Support, directed Vigil's supervisors to investigate the matter. The supervisors took written statements from Vigil, Garcia, Kovach, and Roberts on August 28, 1996. Vigil and Roberts denied overstating their overtime hours. Garcia and Kovach admitted to falsifying their overtime hours. Later that day, Hellman informed Vigil that he was scheduled to appear at a September 3 meeting, pursuant to Colorado State Personnel Board Rule 8-3-3 ("the 8-3-3 meeting"), to determine whether cause existed for disciplinary action in connection with the overtime allegations.

Before receiving notice of his 8-3-3 meeting, Vigil attempted to set up a meeting with George Thomas, defendant's Director of Human Resources and equal employment opportunity ("EEO") officer. Plaintiff wished to meet with Thomas because he wanted to be informed of his legal rights regarding the questioning about overtime. Vigil contacted the other accused employees, including Kovach, to urge them to attend the meeting with him. The meeting never occurred because Thomas was too busy. On August 29, 1996, Kovach

- 3 -

notified Hellman that Vigil was trying to meet with Thomas and that he did not want to be associated with such a meeting. Hellman told Kovach not to worry because he would shortly "take care" of the situation. Within two hours, Hellman placed all four employees on paid administrative suspension pending further investigation.

At the 8-3-3 meetings, Vigil and Roberts, through their attorney, continued to deny any wrongdoing and asserted that Kovach and Garcia had left early but that they had stayed behind to perform system backups. Defendant's investigation uncovered no evidence verifying plaintiff's claim that a system backup was performed on August 22. Defendant allowed Kovach and Garcia to return to work after they corrected their time reports, and it took no further action against them.

Plaintiff remained on paid administrative suspension. On September 10, 1996, the University sent each of the four employees additional interrogatories regarding the overtime matter. Garcia and Kovach responded to the interrogatories. However, plaintiff's attorney wrote to defendant on September 20, 1996, and proclaimed that he had no obligation to answer defendant's interrogatories and that Vigil and Roberts stood by their responses in the 8-3-3 meetings, which he believed fully explained the matter. On September 25, 1996, defendant terminated both plaintiff and Roberts. In Vigil's notice of disciplinary

action, Hellman informed plaintiff that he was being terminated because he was in a position of trust, conspired to misreport overtime, and lied about it. Plaintiff appealed the University's termination decision to the Colorado State Personnel Board. On January 21, 1997, a state administrative law judge ("ALJ") affirmed the University's actions, finding that plaintiff was afforded due process and that defendant did not otherwise violate Colorado law in disciplining plaintiff.

On August 13, 1997, Vigil commenced this Title VII action in the United States District Court for the District of Colorado, alleging that defendant terminated him in retaliation for engaging in protected activity, specifically, for attempting to meet with George Thomas in his capacity as defendant's EEO officer. On January 6, 1998, the University filed a motion for summary judgment, which the district court granted on April 14, 1998.

## Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. See Byers v. City of Albuquerque, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this

standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. See Byers, 150 F.3d at 1274.

Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. See, e.g., Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). If there is no genuine issue of material fact in dispute, we determine whether the district court correctly applied the substantive law. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).

## Discussion

In deciding whether to grant summary judgment on a Title VII retaliation claim, we utilize the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under this approach, the plaintiff initially bears the burden of production to establish a prima facie case of a Title VII

violation." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999), petition for cert. filed, (May 24, 1999) (No. 98-1884); accord Berry v. Stevinson Chevrolet, 74 F.3d 980, 985-86 (10th Cir. 1996). To establish a prima facie case of retaliation, a plaintiff must show: "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action." Berry, 74 F.3d at 985; see also McCue v. Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). A plaintiff can demonstrate a causal connection either by direct evidence or by inferences arising from an adverse employment action that closely follows the protected conduct. See Candelaria v. EG&G Energy Measurements, Inc., 33 F.3d 1259, 1261-62 (10th Cir. 1994). Once plaintiff has presented a prima facie case, the burden shifts to the defendant to advance a legitimate, nonretaliatory reason for the challenged employment action. See Berry, 74 F.3d at 986. If the defendant provides such reasons for the employment action, the plaintiff may defeat summary judgment by showing that the defendant's proffered reasons for the employment action are a pretext for retaliation, that is, unworthy of belief. See id.; Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Although the evidence in support of plaintiff's retaliation claim is thin, we

conclude, as did the district court, that plaintiff has put forth sufficient evidence to establish a prima facie case of retaliation. The record reflects that Vigil attempted to meet with defendant's EEO officer and was suspended within two hours after defendant learned of this attempted meeting. Vigil was also ultimately terminated. Thus, the burden of production shifts to the defendant to advance a legitimate, nonretaliatory reason for the employment actions. The defendant has satisfied its burden by providing several nonretaliatory reasons for the adverse employment actions, namely, that it believed plaintiff submitted inflated overtime reports and lied about it.[1] Consequently, the burden of production returns to plaintiff to produce evidence demonstrating that those proffered reasons are pretextual.

## A. Pretext Analysis

To establish pretext in a retaliation claim, plaintiff must show "'that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason.'" McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998) (quoting Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1535 (10th Cir. 1995)). Plaintiff may accomplish this by demonstrating "such weaknesses, implausibilities,

---

[1] The record indicates that defendant may have also based its decision to terminate Vigil, in part, on the allegations that Vigil exerted pressure upon other employees to falsify their overtime reports.

inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted . . . reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations omitted). In support of his assertion of pretext, Vigil advanced the following evidence before the district court: (1) the close temporal proximity of the adverse employment action to the protected activity; (2) defendant's more severe punishment of Vigil than similarly situated employees who committed the same misconduct; and (3) defendant's allegedly disturbing procedural irregularities in justifying Vigil's termination. The district court held that Vigil failed to meet his burden of showing pretext. Plaintiff claims that the district court erred because, in the course of its analysis, it made numerous factual findings unsupported in the record and ignored some evidence of pretext.

### 1. Temporal Proximity

Plaintiff argued below that the temporal proximity of his attempt to meet with defendant's EEO officer and the subsequent suspension established pretext under Marx v. Schnuck Markets, Inc., 76 F.3d 324 (10th Cir. 1996). The district court distinguished this case from Marx in that plaintiff did not engage in protected activity until after the investigation and disciplinary proceedings had begun. The district court further noted that:

> To rule, as Plaintiff wishes, would create a situation where potential plaintiffs who are facing a termination could manufacture a triable issue of fact by seeking a protected right after termination proceedings had begun but before those proceedings had reached a conclusion. Such a conclusion would appear to be an untenable perversion of the protections afforded by Title VII.

Dist. Ct. Order at 8. On appeal, plaintiff asserts that the district court erred in making a factual conclusion that he had engaged in protected activity only after disciplinary proceedings had begun.

We agree that temporal proximity of an adverse employment action to protected activity may permit a plaintiff to meet the causal connection requirement and thus establish a *prima facie* case of retaliation, creating a presumption of retaliatory motive. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997); Marx, 76 F.3d at 329. However, that presumption "drops out of the picture" once the employer advances a legitimate, nonretaliatory reason for the employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). At that point, unless the plaintiff meets his burden of showing that the proffered reason is unworthy of credence, summary judgment is appropriate. Temporal proximity of adverse employment action to protected activity is not dispositive in the pretext analysis, but instead is simply one fact that may throw doubt on defendant's termination justification. See Conner, 121 F.3d at 1398 (rejecting argument that "protected conduct closely followed by adverse action *always* justifies an inference of retaliatory motive" sufficient to

defeat summary judgment). We must evaluate each case based on its specific facts. See id.

Here, we find plaintiff's evidence of temporal proximity insufficient to establish pretext. Although defendant took an adverse action against Vigil, the suspension, within hours of when it learned of plaintiff's attempt to meet with its EEO officer, defendant explicitly informed Vigil that he was being placed on administrative suspension due to allegations of his complicity in a scheme to misreport overtime. Indeed, the undisputed facts comport with defendant's proffered reason for the suspension. Defendant not only suspended plaintiff, but also contemporaneously suspended the three other employees involved in the overtime incident, some of whom never attempted to contact the EEO officer. Furthermore, the undisputed facts indicate that defendant was considering some type of disciplinary action against all four employees on August 28, 1996, a day before Kovach informed Hellman that Vigil was attempting to meet with Thomas.[2] This timeline greatly undermines the nefarious motive plaintiff wishes

_____

[2] Even if Thomas, an employee of the defendant and its EEO officer, was aware that plaintiff was engaging in protected activity on August 28, that is not sufficient to support an inference that defendant had a retaliatory motive for its decision to suspend Vigil. In order to show that the employer had knowledge of the protected activity, "an employee must show that the 'individual responsible for making the adverse employment *decision*' knew of the protected activity." Lockaby v. United Testing Group, Inc., 986 F. Supp. 1400, 1404 (N.D. Ga. 1997) (quoting Lewis v. Zilog, Inc., 908 F. Supp. 931, 949 (N.D. Ga. 1995)); see also Cohen v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir. 1982); Corley v. Jackson Police Dep't, 639 F.2d 1296, 1300 n.6 (5th Cir. 1981); Cichon v. Roto-

to impute to the timing of defendant's decision to place him on administrative suspension. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997) (finding temporal proximity insufficient to establish pretext when disciplinary action had begun prior to the protected activity because the subsequent adverse employment acts "simply completed the disciplinary process already set in motion").

Plaintiff does not dispute the timeline. He merely asserts that, at the time he contacted Thomas, he did not know that disciplinary proceedings had begun. Vigil's state of mind is irrelevant to this inquiry. Viewing the evidence in the light most favorable to Vigil, we nevertheless conclude that he failed to put forth sufficient evidence for a reasonable juror to conclude that the timing of his suspension rendered defendant's legitimate, nonretaliatory reason for it unworthy of belief.

## 2. Disparate Treatment

Vigil also argued below that the fact defendant disciplined him more severely than employees who engaged in similar misconduct establishes pretext. In particular, plaintiff asserted that he was similarly situated to Garcia and Kovach, who also overstated overtime, but who were not terminated. In addition,

---

Rooter Servs. Co., 1998 WL 851501, at *9 n.9 (N.D. Ill. Dec. 3, 1998) (slip opinion). Plaintiff provided no evidence that Hellman knew of plaintiff's effort to contact the EEO officer prior to Kovach informing him of that fact on August 29, 1996.

plaintiff argued that Roberts' termination supported his pretext argument because he also engaged in protected activity with plaintiff. The district court found Vigil not similarly situated to Garcia and Kovach because they admitted to their misconduct, whereas Vigil continued to deny any wrongdoing. The district court further noted that Roberts' termination did not advance plaintiff's claim because: (1) defendant disciplined Roberts, who was more similarly situated to plaintiff than any other person involved in the overtime incident, in the same manner -- termination, and (2) the evidence did not support that Roberts had engaged in protected activity. As a result, the district court found that Vigil had failed to show pretext. Plaintiff asserts that the district court erred in its conclusions regarding who was similarly situated and the meaning attributable to defendant's actions with respect to the similarly situated employees.

Based on our review of the record, we agree with the district court that plaintiff's disparate treatment argument fails to demonstrate that defendant's proffered reasons for Vigil's termination are unworthy of belief. Instances of disparate treatment of similarly situated individuals may support a claim of pretext, such as when employees who "are involved in or accused of the *same offense* . . . are disciplined in different ways." Ward v. Procter & Gamble Paper Prods. Co., 111 F.3d 558, 560 (8th Cir. 1997) (internal quotation omitted); see also Aramburu v. The Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997).

However, plaintiff must show that he was similarly situated in all relevant aspects. See Ward, 111 F.3d at 560. Although the violations need only be of "comparable seriousness," see Aramburu, 112 F.3d at 1404, plaintiff must account for all "differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it," Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); accord David v. City & County of Denver, 101 F.3d 1344, 1360 (10th Cir.) (quoting EEOC v. Flasher Co., 986 F.2d 1312, 1320 (10th Cir. 1992)), cert. denied, 118 S. Ct. 157 (1997).

The undisputed facts show that plaintiff was not similarly situated to Garcia and Kovach because defendant not only accused Vigil of violating a workplace rule by submitting an inflated overtime report, it also accused him of subsequently lying about his alleged misconduct.[3] Throughout defendant's investigation, plaintiff and Roberts repeatedly denied any wrongdoing, asserting that they worked all hours reported performing a system backup. Defendant ultimately concluded that they were lying about their overtime since no computer records existed of the purported system backup. The accusation that Vigil remained

_____

[3] The district court also distinguished plaintiff's conduct from that of Garcia and Kovach because Vigil was accused of pressuring employees to misreport overtime. Plaintiff disputes the veracity of this accusation. We need not address this contention because we find the accusation that plaintiff not only misreported overtime, but also subsequently lied to conceal the wrongdoing is itself sufficient to distinguish his actions from those of Garcia and Kovach.

untruthful aggravated his offense and distinguished the seriousness of his conduct from that of Garcia and Kovach, thereby justifying more severe punishment.

We also find plaintiff's contention that Roberts' termination supports an inference of retaliatory intent without merit. Even assuming, arguendo, that Roberts and Vigil were similarly situated because they both engaged in protected activity, they were also similarly situated because *they were accused of the same misconduct*. As noted above, both Vigil and Roberts continued to deny that they inflated their overtime reports. Thus, it is no surprise that the University treated Vigil and Roberts similarly and terminated both. Thus, Roberts' termination refutes, rather than supports, plaintiff's claim of pretext. It is, at the minimum, consistent with defendant's proffered reasons for Vigil's termination. Therefore, we find that plaintiff's assertion regarding his treatment vis-a-vis the other accused employees is, in this case, insufficient for a reasonable juror to conclude that defendant's proffered reasons for Vigil's termination constituted pretext.

### 3. Procedural Irregularities

Plaintiff also argued below that the defendant engaged in disturbing procedural irregularities that demonstrate pretext. See Simms, 165 F.3d at 1328 (noting that evidence of pretext in Title VII discrimination case includes, among other things, disturbing procedural irregularities). In particular, plaintiff claims defendant changed the reasons for its disciplinary action against him and

disciplined him for reasons not presented at his 8-3-3 hearing, which plaintiff asserts is in violation of Colorado law.[4]  The district court did not address these arguments in its order.  Plaintiff contends this constitutes reversible error.  We disagree.

To begin with, defendant did not change its original basis for disciplining plaintiff, that is, its belief that Vigil submitted falsified overtime reports.  At most, it added an additional aggravating factor for disciplining Vigil -- his subsequent deceitfulness -- which resulted in more severe punishment.  The additional basis of Vigil's perceived untruthfulness in no way discredits the original reason for disciplinary action, particularly when the additional basis flows naturally from the underlying charge.  Thus, we find that the addition of a new reason for the University's disciplinary action against Vigil does not amount to a disturbing procedural irregularity that supports a finding of pretext.

Similarly, we find unavailing plaintiff's argument that defendant's failure to inform him of all bases for his termination at his 8-3-3 meeting constitutes a disturbing procedural irregularity that implies pretext.  Pursuant to state law, <u>see</u>

---

[4] The particular reason that plaintiff challenged below was that he continued to lie about his overtime hours.  To the extent that plaintiff argues additional reasons (e.g., allegations of threats and pressure), he has waived such arguments because he did not properly raise them before the district court in opposition to defendant's motion for summary judgment.  <u>See, e.g.</u>, <u>Sports Racing Servs., Inc. v. Sports Car Club of Am.</u>, 131 F.3d 874, 880 n.8 (10th Cir. 1997); <u>In re Walker</u>, 959 F.2d 894, 896 (10th Cir. 1992).

Colo. State Personnel Bd. R. 8-3-3(D)(1), 4 Code Colo. Reg. 801-1, defendant held an 8-3-3 meeting in which plaintiff had an opportunity to, and did, through his attorney, confront the allegations of misreporting overtime. The challenged basis for Vigil's termination -- that he continued to lie about the overtime matter -- was a natural outgrowth from the underlying allegations that he intentionally misreported overtime. It is incredible that plaintiff would be unduly surprised to learn that repeatedly providing what the employer reasonably believed was false information during the investigation of the overtime matter could result in further or more severe disciplinary measures. Regardless, plaintiff did, in essence, respond to the allegation that he was lying. During his 8-3-3 meeting, Vigil's denials to the underlying charge that he inflated overtime hours also constitute assertions that he was telling the truth regarding the matter. Furthermore, defendant subsequently requested plaintiff to respond to additional interrogatories in which plaintiff was free to present further evidence that his account of the events was accurate and truthful. He declined to do so. Therefore, even if defendant failed to explicitly inform plaintiff that deceitfulness during the investigation process could enhance his punishment, that failure to inform, under these circumstances, neither violates Colorado law nor constitutes a procedural irregularity that supports a finding of pretext.

In sum, viewing the evidence and reasonable inferences therefrom in the

light most favorable to plaintiff, we find that he has presented insufficient evidence to enable a rational fact finder to conclude that defendant's proffered reasons for its decision to discipline him were "unworthy of credence." See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotations omitted). Consequently, plaintiff has failed his burden of showing that the defendant's legitimate, nonretaliatory reasons for disciplining him were pretextual.

**B. Reliance on State Administrative Law Judge's Findings**

Finally, plaintiff argues that the district court committed reversible error by relying on a state ALJ's unreviewed factual findings. We disagree. Although it is well established that a court may not give the unreviewed findings of a state ALJ preclusive effect in a subsequent Title VII action, see, e.g., University of Tenn. v. Elliott, 478 U.S. 788, 796 (1986), we do not believe that the district court improperly relied on the ALJ's findings in making its decision. The district court opinion makes reference to the ALJ's findings only once, stating: "The materials submitted to this Court establish that Mr. Garcia admitted he had inflated hours while Mr. Vigil continued to deny any wrongdoing, a denial that was ultimately refuted by an administrative law judge's findings." Dist. Ct. Order at 9. This passing reference was made in the district court's discussion of why Garcia and Vigil were not similarly situated. Such a fleeting reference does not

- 18 -

establish that the district court gave the ALJ's findings preclusive effect.

More importantly, the veracity of Mr. Vigil's denial of wrongdoing was, at best, collateral to the district court's analysis. The central issue was whether defendant's proffered reason for Vigil's termination constituted pretext for retaliation, that is, was unworthy of belief. The University's good faith belief that Vigil and Roberts misreported overtime and then lied about it are sufficient nonretaliatory reasons to rebut a Title VII retaliation claim, whether or not the allegations are later proven true in subsequent administrative proceedings. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. The test is good faith belief." (internal citation omitted)). Even though plaintiff vehemently denies any wrongdoing, he fails to present sufficient evidence for a reasonable juror to conclude that defendant's belief that he misreported overtime and subsequently lied about it was not made in good faith. Accordingly, we find no error in the district court's reference to the state ALJ's findings.

## **Conclusion**

For the above reasons, we AFFIRM the district court's order of April 14, 1998, granting defendant's motion for summary judgment.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Circuit Judge