**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**SWIFT TRANSPORTATION CO., INC., Defendant.**

No. 99–2329–JWL.

United States District Court,
D. Kansas.

Nov. 9, 2000.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, Barbara A, Seely, E.E.O.C., St. Louis, MO, Andrea G. Baran, U.S. E.E.O.C., Kansas City, KS, for Plaintiff.

Paula E. Hosler, Lathrop & Gage L.C., Overland Park, KS, Rebecca McGinnis, Patrick M. Gavin, Lathrop & Gage L.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Equal Employment Opportunity Commission (EEOC) filed suit against defendant Swift Transportation Company alleging violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., based on a wage disparity between female employees and male employees. Plaintiff also alleges that defendant retaliated against a female employee based on her participation in plaintiff's investigation of a related charge of discrimi-

nation. This matter is presently before the court on defendant's motion for summary judgment (doc. # 58). As set forth in more detail below, defendant's motion is granted with respect to plaintiff's retaliation claim and is granted to the extent plaintiff seeks to recover both prejudgment interest and liquidated damages on its EPA claim. The motion is otherwise denied.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant Swift is a transcontinental trucking company with thirty-six terminals throughout the country, including a terminal in Edwardsville, Kansas. Jon Isaacson was the Terminal Manager for the Edwardsville terminal until June 1998. During that time, he was responsible for hiring personnel for that facility and, in large part, was responsible for setting salaries of personnel. In July 1998, Shane Blair became the Terminal Manager for the Edwardsville facility and assumed Mr. Isaacson's responsibilities.

The particular position at issue in this case is the driver manager position. Defendant's driver managers are responsible for dispatching, scheduling and managing over-the-road trucks and their drivers. Not all driver managers are responsible for the same types of fleets of trucks. Some driver managers, for example, are responsible for defendant's dedicated fleets-trucks that service a particular customer. Other driver managers are responsible for regional fleets-trucks that service customers within a particular region of the country. Other fleets include "owner operator" fleets (trucks owned by the drivers); trainer fleets (trucks driven by new drivers who are under the tutelage of a certified trainer); and developmental fleets (trucks driven by new drivers who have left the trainer fleet).

In May 1998, Melissa Meek, a driver manager, filed a charge of discrimination with the EEOC alleging pay discrimination in violation of the Equal Pay Act and Title VII. The EEOC investigated Ms. Meek's charge and concluded that defendant had discriminated against Ms. Meek and six other female driver managers in violation of the Equal Pay Act and Title VII. The EEOC issued Ms. Meek a notice of right-to-sue and Ms. Meek proceeded with her own cause of action against defendant. *See Meek v. Swift Transp. Co.*, No. 99–2233–JWL, 2000 WL 382039 (D.Kan. Apr.11, 2000). In July 1999, the EEOC filed this suit, seeking relief on behalf of the other six female driver managers-Kim Harrington; Pam Dishon; Sheri Rice; Barbara Jensen; Julie Pine; and Sue Matlack.

The EEOC also maintains that defendant retaliated against Ms. Harrington for her alleged role in the EEOC's investigation of Ms. Meek's charge. The facts relevant to the retaliation claim are as follows. Ms. Meek's charge was filed on May 20, 1998. Defendant received a copy of the charge on or about May 28, 1998. Shortly thereafter, Jon Isaacson held a meeting with all of defendant's driver managers in which he advised the driver managers, including Ms. Harrington, that Ms. Meek had filed a charge of discrimination and that the EEOC "might be" contacting some of the driver managers. In June 1998, Mr. Isaacson reassigned Ms. Harrington from her driver manager position to a customer service position. Plaintiff contends that defendant's decision to reassign Ms. Harrington was based on the fact that Ms. Harrington was "about to testify" in the investigation of Ms. Meek's charge. It is undisputed, however, that the EEOC, prior to the time that Ms. Harrington was transferred, had no communication whatsoever with Ms. Harrington and had not indicated to defendant that it desired to talk to Ms. Harrington. In fact, the EEOC did not interview Ms. Harrington until February 1999–eight months after her transfer.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Plaintiff's EPA Claim

Plaintiff asserts that defendant violated the Equal Pay Act by paying female driver managers less money than male driver managers for equal work. The EPA provides, in relevant part, that:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

To establish a prima facie case under the EPA, plaintiff has the burden of proving that female driver managers were performing work which was "substantially equal" to that of male driver managers considering the skills, duties, supervision, effort and responsibilities of the jobs; that

the conditions where the work was performed were basically the same; and that male driver managers were paid more under such circumstances. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir.1997) (citing *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir.1993) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974))). If plaintiff establishes a prima facie case, then defendant "must undertake the burden of persuading the jury" that the pay differential was premised on a factor other than sex. *See id.* (citing *Tidwell*, 989 F.2d at 409).

For purposes of its motion, defendant assumes that plaintiff has established a prima facie case. Nonetheless, defendant contends that summary judgment is appropriate on plaintiff's EPA claim because any pay differential between female driver managers and male driver managers was based on factors other than sex. Specifically, defendant maintains that the salary differential between female driver managers and male driver managers is "attributable to each individual's experience, salary history, negotiations, MNX salary (if applicable), computer skills, people skills, retention of employees, whether he/she would be a good fit for Swift and Swift's need for a driver manager."[1] In response, plaintiff argues that defendant has not presented sufficient evidence to meet its burden of proof. The court agrees with plaintiff that defendant has not met its burden of proof at this stage of the litigation and, thus, denies defendant's motion for summary judgment on plaintiff's EPA claim.

As described above, once an EPA plaintiff has established a prima facie case, the burden of persuasion shifts to the defendant to prove an affirmative defense-that the pay differential was "premised on a factor other than sex." *See Sprague*, 129 F.3d at 1364 (citing *Tidwell*, 989 F.2d at 409). In other words, defendant's burden with respect to plaintiff's EPA claim-the

burden of ultimate persuasion-differs significantly from its burden with respect to plaintiff's Title VII claim. Because defendant bears the burden of proof at trial on its affirmative defense, it may only prevail at the summary judgment stage if it proves its affirmative defense "so clearly that no rational jury could find to the contrary." *See Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3rd Cir.2000). Moreover, in proving its affirmative defense, defendant must submit evidence from which a reasonable jury could conclude "not merely that [defendant's] proffered reasons *could* explain the wage disparity, but that the proffered reasons *do in fact* explain the wage disparity." *See id.* at 107–08 (emphasis in original). Stated another way, defendant must submit evidence from which a reasonable factfinder could conclude that the proffered reasons actually motivated the pay differential. *See id.* (noting that the language of the Equal Pay Act prohibits differential pay "except where such payment is *made pursuant to*" one of the four affirmative defenses); *accord Sprague*, 129 F.3d at 1364 ("[U]nder the EPA, the onus is on the employer to establish that the pay differential was premised on a factor other than sex."). More to the point, an employer seeking summary judgment on an Equal Pay Act claim must present sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains. *See Stanziale*, 200 F.3d at 108.

■ In its papers, defendant simply asserts that salary decisions for driver managers were based on a laundry list of factors, including experience, salary history, salary negotiations, computer skills, people skills and defendant's needs at the time. In support of its assertion, defendant directs the court to various excerpts from the deposition testimony of Mssrs. Isaacson and Blair which purportedly ex-

---

1. MNX refers to a company that defendant acquired in 1994. At the time of the acquisition, defendant offered positions to all MNX employees.

plain the reason that each driver manager was paid a particular salary. The court has carefully reviewed each of these excerpts. The vast majority of those excerpts simply do not reflect that any of the reasons set forth by defendant for its salary decisions actually factored into any particular salary decision. In fact, in most instances, the relevant decisionmaker had no memory of why a particular salary decision was made. With respect to Brian Bottorff, for example, Mr. Isaacson testified that he was "not exactly sure" what factors he relied on in deciding to pay Mr. Bottorff an initial starting salary of $425 per week. With respect to Dan Mathena's salary, the relevant excerpt from Mr. Isaacson's deposition is as follows:

- How did you decide to pay Mr. Mathena 475 a week when you hired him?
- I don't know for sure, but we had to come to an agreement somehow because he came to work for us at that price. I don't know what type of negotiation. I really don't remember.
- Do you know if there was any negotiation at all?
- I don't remember. I don't know if we negotiated it or not.
- You just don't know how that number was arrived at, is that correct?
- I really don't. I would be guessing.

Similarly, Mr. Isaacson could not remember what factors he considered in setting the salaries of Julie Pine or David Trowbridge. With respect to Ms. Pine's salary, Mr. Isaacson testified, "I don't remember what I factored in. I don't remember exactly all what [sic] was negotiated. I just remember that that's the agreement we came to and she was happy about it." When asked why he decided to pay Mr. Trowbridge $550 per week, Mr. Isaacson simply responded, "It's the dollar amount we came to terms on, I am sure, and committed to each other an agreement to work." He could not recall any specific details about the negotiation of Mr. Trowbridge's salary. With respect to Barb

Jensen, the deposition excerpt to which defendant directs the court reflects only that Mr. Isaacson was not involved whatsoever in the negotiation of Ms. Jensen's salary as a driver manager.

Even in those instances in which Mr. Isaacson could remember why a particular salary decision was made, the record reflects that factual issues exist with respect to the accuracy of Mr. Isaacson's recollection. With respect to Ross Younger, for example, Mr. Isaacson testified that he decided to pay Mr. Younger a starting salary of $28,000 per year because Mr. Younger "had two or three other job offers making at least that much money" and Mr. Isaacson wanted Mr. Younger to come to work for defendant. Mr. Younger testified, however, that he had not received any other job offers at the time he was hired by defendant and, in fact, that he had accepted defendant's job offer before he and Mr. Isaacson even discussed salary. Moreover, with respect to Gina Grell, Doug Inlay and Linda Malasek, Mr. Isaacson testified that salary decisions were based on the "current pay scale" at DTI-a company acquired by defendant. In other words, Mr. Isaacson testified that the individuals who were hired in connection with the DTI acquisition were essentially brought in at the same rate of pay that they were making at DTI. For example, Mr. Isaacson testified that Mr. Inlay was hired at a salary of $615 per week because he was "quite certain" that Mr. Inlay was making that amount at DTI. Mr. Inlay's employment application, however, suggests that he was only making $500 per week at DTI at the time of the acquisition. His application further reflects that he had not even worked as a driver manager at DTI or as a driver manager for any other trucking company. By contrast, Ms. Grell was hired by Mr. Isaacson at a salary of $576 per week, despite the fact that she was apparently making the same salary as Mr. Inlay at DTI and despite the fact that she had experience as a driver manager at DTI. Similarly, Ms. Malasek was hired by

Mr. Isaacson at a salary of $576 per week, despite the fact that she had been working at DTI as a driver manager.[2]

In short, defendant has hardly come forward with evidence "such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains." In the absence of such evidence, defendant cannot meet its burden of persuasion and its motion for summary judgment must be denied. *See id.* (reversing district court's grant of summary judgment on Equal Pay Act claim where the record contained no evidence that the defendant made salary decisions based on educational qualifications); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1312 (2d Cir.1995) (reversing district court's grant of summary judgment on Equal Pay Act claim where the defendant merely asserted that the salary differential was based on experience; mere assertion was insufficient to meet the defendant's burden of persuasion to show that it based salary decisions on experience).

In the alternative, defendant moves for summary judgment on plaintiff's claim that it is entitled to additional damages based on defendant's alleged willful violation of the EPA. *See* 29 U.S.C. § 255 (extending the statute of limitations to allow the award of three years of back pay rather than just two years of back pay for willful violations). According to defendant, there is no evidence that defendant willfully violated the EPA and, thus, plaintiff can only recover back pay for the two-year period. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (a violation of the statute is willful if the employer knew or showed reckless disregard for the fact that its conduct was prohibited by the statute). In light of the evidence presented by plaintiff at this juncture, however, the court believes that such a ruling would be prema-

ture and is best left for consideration in connection with a timely Rule 50 motion. Thus, defendant's motion for summary judgment with respect to plaintiff's claim for additional damages is denied.

Defendant also moves in the alternative for summary judgment on plaintiff's request for prejudgment interest on its EPA claim to the extent that request is duplicative of plaintiff's request for liquidated damages. According to defendant, plaintiff is not permitted to recover both prejudgment interest and liquidated damages on its EPA claim. The majority of the Circuit Courts of Appeal that have addressed the issue have adopted the rule that successful FLSA plaintiffs cannot obtain prejudgment interest in addition to liquidated damages because that would enable them to obtain double recovery. *See, e.g., Braswell v. City of El Dorado, Arkansas,* 187 F.3d 954, 957 (8th Cir.1999); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 406 (7th Cir.1999) (and cases cited therein); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 715, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (prejudgment interest not available under FLSA because liquidated damages, which at that time were mandatory under the FLSA, compensated plaintiffs for any delay).[3] The case law, then, seems to support clearly defendant's position. Nevertheless, the court sees no reason to analyze this issue further as plaintiff has not responded to defendant's argument in its papers and, thus, has apparently abandoned its claim for prejudgment interest in addition to liquidated damages. Thus, if plaintiff prevails on its EPA claim at trial and if the court determines that plaintiff is entitled to liquidated damages, then plaintiff will not be entitled to prejudgment interest.

## IV. Plaintiff's Title VII Claim

The court now examines plaintiff's equal pay claim under Title VII. As with plain-

---

**2.** Mr. Isaacson could not recall what Ms. Malasek's salary had been at DTI.

**3.** A 1947 amendment to the FLSA gives the court discretion to award no liquidated damages if the employer shows that he acted in good faith. *See* 29 U.S.C. § 260.

tiff's EPA claim, defendant assumes that plaintiff has established a prima facie case with respect to its Title VII claim. The burden, then, shifts to defendant to articulate a legitimate, nondiscriminatory reason for the pay disparity. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir.1997) (quoting *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1019 (11th Cir.1994)). According to defendant, the salary differential between female driver managers and male driver managers is "attributable to each individual's experience, salary history, negotiations, MNX salary (if applicable), computer skills, people skills, retention of employees, whether he/she would be a good fit for Swift and Swift's need for a driver manager." Defendant has satisfied its "exceedingly light" burden. *See id.* (quoting *Meeks*, 15 F.3d at 1019) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992)).

■ For plaintiff's claim to survive summary judgment, then, plaintiff must show that defendant, regardless of its proffered reasons, intentionally discriminated against female driver managers. *See id.* (citing *Meeks*, 15 F.3d at 1019).[4] In other words, plaintiff must show that a discriminatory reason more likely than not motivated defendant to pay female driver managers less than it paid male driver managers. *See id.* (citations omitted). As set forth below, the court concludes that plaintiff has set forth sufficient facts from which a reasonable jury could infer that defendant paid its female driver managers a lower salary than its male driver managers based on sex. Plaintiff has come forward with evidence suggesting that defendant's proffered reasons for its salary decisions are pretextual. As set forth above in connection with plaintiff's EPA claim, Mr. Isaacson's deposition testimony casts doubt on defendant's proffered rea-

sons for the wage disparity. In most instances when Mr. Isaacson was asked about a particular salary decision, he had no meaningful recollection of the reasons for the decision. He did not say that any of those decisions were based on people skills, computer skills, or whether the individual was a "good fit" for defendant. He was not able to say with any degree of certainty that those decisions were based on experience, negotiations, salary history or defendant's need for a driver manager. As also set forth above, to the extent Mr. Isaacson was able to remember anything about a particular salary decision, plaintiff's evidence has called into question the accuracy of Mr. Isaacson's recollection.

Plaintiff also contends that defendant continues to change its stated reasons for the wage disparity and that this inconsistency supports an inference of discrimination. Plaintiff, for example, points out that in its answers to plaintiff's interrogatories, served in February 2000, defendant maintained that salary decisions for driver managers were based on "the effort, skill and responsibility of the position; prior experience in the transportation industry; prior management experience; salary history; and educational background." At that time, no mention was made of computer skills, people skills, salary negotiations, whether the individual was a "good fit" for defendant or whether defendant needed a driver manager. Similarly, no mention is now made of prior management experience or educational background. In May 2000, defendant responded to plaintiff's second set of interrogatories. When asked to describe "each and every factor" that defendant considers in making salary decisions, defendant stated that it considers "work experience, salary history and educational background." Now, of course, defendant has developed a laundry list of

---

4. Plaintiff's EPA claim, on the other hand, does not require a showing of intentional discrimination. *See Tidwell v. Fort Howard Corp.*, 989 F.2d 406 (10th Cir.1993) (affirming district court's entry of judgment for defen-

dant on Title VII claim where plaintiff failed to show intentional discrimination even though jury returned a verdict for plaintiff on EPA claim); *accord Sprague,* 129 F.3d at 1364.

reasons underlying its salary decisions. In these circumstances, the court agrees with plaintiff that the change in defendant's stated reasons for the wage disparity, coupled with plaintiff's other pretext evidence, adds force to plaintiff's pretext argument. *See Randle v. City of Aurora*, 69 F.3d 441, 455 (10th Cir.1995) ("shifting of explanations" offered by defendant with respect to rationale underlying wage differential strengthened plaintiff's pretext argument).[5]

In light of the foregoing, it is questionable whether defendant actually based its salary decisions on the factors upon which it contends those decisions were based. Stated another way, a reasonable jury could conclude that the laundry list of factors set forth by defendant for its salary decisions did not play a part in its salary decisions and that the salary decisions were based, at least in part, on the sex of the particular driver manager. Accordingly, the court denies defendant's motion for summary judgment on plaintiff's Title VII claim.[6]

● **Plaintiff's Retaliation Claim**

Plaintiff claims that defendant demoted Kim Harrington because Ms. Harrington was "about to testify" in the EEOC's investigation of a charge of discrimination filed by Ms. Harrington's coworker, Melissa Meek. In support of its motion for summary judgment, defendant contends that plaintiff cannot establish a prima facie case of retaliation and, in any event, cannot establish that defendant's proffered reason for its conduct is pretextual. As set forth below, the court agrees with defendant that plaintiff has failed to establish a prima facie case of retaliation and that plaintiff has not shown that defendant's proffered reason for its conduct is pretextual. Accordingly, summary judgment is entered in favor of defendant.

■ As plaintiff has no direct evidence of retaliatory motive, the court analyzes plaintiff's retaliation claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir.1997) (applying *McDonnell Douglas* burden-of-proof scheme to FLSA retaliation claim). To establish a prima facie case of retaliation, the EEOC must demonstrate that (1) Ms. Harrington engaged in activity protected by the FLSA; (2) Ms. Harrington suffered an adverse employment action subsequent to or contemporaneous with such activity; and (3) a causal connection exists between the protected activity and the adverse action. *See id.* Once plaintiff establishes a prima facie

5. Plaintiff also maintains that defendant's position has changed dramatically as evidenced by defendant's position statement to the EEOC in connection with Melissa Meek's charge of discrimination. According to plaintiff, defendant stated in that position statement, written in July 1998, that salary decisions for driver managers were based only on experience. In reply, defendant maintains that the court cannot consider its position statement to the EEOC as the statement is inadmissible under Federal Rule of Evidence 408. Although the parties have thoroughly briefed this issue-plaintiff has filed a surreply and defendant has filed a sur-surreply-the court concludes that it need not address the admissibility of the position statement at this juncture. The court has reviewed the position statement and finds that the statement simply does not support plaintiff's argument. No where in the position statement does defendant maintain that salary decisions for driver managers were based on experience. Rather, defendant merely states that the three particular driver managers who were paid more than Melissa Meek were paid more because of their experience. Thus, the court disregards defendant's position statement in analyzing plaintiff's pretext evidence.

6. Because the court concludes that plaintiff has set forth sufficient evidence of pretext to survive summary judgment on its Title VII claim, the court declines to address the relevance of certain statements allegedly made by Mr. Isaacson that, according to plaintiff, reflect a bias against female driver managers. The court will address the relevancy and/or admissibility of these alleged statements in connection with any motions in limine the parties might file.

case, the burden shifts to defendant to offer a legitimate, nonretaliatory reason for its actions. *See id.* If defendant comes forward with a legitimate reason for its actions, the burden then reverts to plaintiff to show that there is a genuine dispute of material fact as to whether defendant's proffered reason for the challenged action is pretextual. *See id.*

■ According to defendant, plaintiff cannot satisfy any of the elements of its prima facie case of retaliation. The court begins with defendant's argument that Ms. Harrington did not suffer an adverse employment action. According to defendant, Ms. Harrington's "transfer" from the driver manager position to the customer service position is a lateral move with no change in pay or benefits and, thus, does not constitute an "adverse action." Plaintiff, on the other hand, has come forward with evidence suggesting that the "transfer" was, in reality, a demotion. According to plaintiff's evidence, the customer service position involves considerably less skill and responsibility than the driver manager position. Plaintiff's evidence also suggests that Ms. Harrington had less earning potential in the customer service position than she did in the driver manager position. Given the Tenth Circuit's liberal interpretation of "adverse employment action," *see Jeffries v. Kansas,* 147 F.3d 1220, 1231–32 (10th Cir.1998), and the Circuit's willingness to recognize that "an adverse employment action can arise from events having an adverse impact on future employment opportunities," *see Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996), the court concludes that events having an adverse impact on an employee's earning potential can constitute "adverse actions" sufficient for purposes of plaintiff's prima facie case. In addition, the Circuit has recognized that a job reassignment may be considered a demotion where the employee receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than his or her previous job assignment. *See Hooks v. Dia-*

*mond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 799 (10th Cir.1993), *overruled in part on other grounds, Buchanan v. Sherrill,* 51 F.3d 227, 229 (10th Cir.1995). For these reasons, the court concludes that genuine issues of material fact exist with respect to whether Ms. Harrington suffered an adverse employment action when she was transferred to the customer service position.

■ Nonetheless, plaintiff still falls short of establishing a prima facie case of retaliation. With respect to the first element, protected activity, defendant maintains that Ms. Harrington did not engage in activity protected by the FLSA prior to defendant's decision to move Ms. Harrington to the customer service position. The anti-retaliation provision of the FLSA protects only an employee who has "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding." *See* 29 U.S.C. § 215(a)(3). According to plaintiff, Ms. Harrington was "about to testify" in the EEOC's investigation of a discrimination charge filed by one of Ms. Harrington's coworkers, Melissa Meek. For the reasons explained below, the court concludes that plaintiff has failed to establish that Ms. Harrington was "about" to testify and, accordingly, cannot establish a prima facie case of retaliation.

Ms. Meek's charge was filed on May 20, 1998. Defendant received a copy of the charge on or about May 28, 1998. Shortly thereafter, Jon Isaacson held a meeting with all of defendant's driver managers in which he advised the driver managers, including Ms. Harrington, that Ms. Meek had filed a charge of discrimination and that the EEOC "might be" contacting some of the driver managers. During this meeting, Mr. Isaacson said nothing at all about whether the driver managers should agree to talk to the EEOC. In fact, the evidence reveals only that the Mr. Isaacson advised the group about the charge itself and that the EEOC "might" be con-

tacting "some of them." In June 1998, Mr. Isaacson moved Ms. Harrington to the customer service position. Although plaintiff contends that the transfer (or demotion) was based on the fact that Ms. Harrington was "about to testify" in the investigation of Ms. Meek's charge, it is undisputed that the EEOC, prior to the time that Ms. Harrington was transferred, had no communication whatsoever with Ms. Harrington and had not indicated to defendant that it desired to talk to Ms. Harrington. In fact, the EEOC did not interview Ms. Harrington until February 1999–eight months after her transfer.

To analyze the merits of plaintiff's retaliation claim, then, the court must determine the meaning of the phrase "about to testify"-the specific activity set forth in § 215(a)(3) upon which plaintiff's retaliation claim is based. While the Tenth Circuit has addressed the scope of the first clause of the FLSA's anti-retaliation provision (*i.e.*, protecting an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]"), *see Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984) (construing first clause of anti-retaliation provision broadly so that even the "unofficial assertion of rights through complaints at work" is protected), the Circuit has not addressed the scope of the second clause of the anti-retaliation provision (*i.e.*, protecting an employee who "has testified or is about to testify in any such proceeding"). In fact, the court has uncovered only one case in which a court has analyzed the "about to testify" language of the FLSA's anti-retaliation provision. *See Ball v. Memphis Bar–B–Q Co.*, 34 F.Supp.2d 342 (E.D.Va.1999), *aff'd*, 228 F.3d 360 (4th Cir.2000). In *Ball*, the court focused on the meaning of the word "about." *See id.* at 345. Looking to Black's Law Dictionary, the court defined

"about" as "something that, while not necessarily imminent, is at least relatively certain and near in time." *See id.* (citing *Black's Law Dictionary* 7 (5th ed. 1979) (Defining "about" as "near in time, quantity, number, quality, or degree. Substantially, approximately, almost or nearly."))[7] Ultimately, the *Ball* court concluded that the "unambiguous meaning" of the "about to testify" language is that "an individual can only receive the benefit of the second clause of § 215(a)(3) when she has testified in an FLSA proceeding or is *scheduled to testify* in a then-pending FLSA proceeding." *See id.* (emphasis added).

In the absence of any legislative history or any other cases suggesting that the rule should be otherwise,[8] the court finds the reasoning of the *Ball* court persuasive. Significantly, the rule pronounced by the *Ball* court comports with the ordinary definitions of the word "about." *See, e.g., Webster's Third New International Dictionary* 5 (1986) (defining "about" as "with some approach to exactness in quantity, number or time," "approximately," "almost," "nearly," "near or not far from in time"); *American Heritage Dictionary* 68 (2d College ed.1985) (defining "about" as "approximately," "nearly," "almost"). More specifically, when the word "about" is followed by an infinitive, as it is in the phrase "about to testify," the word "about" means "on the point or verge of", *see* Webster's, *supra*, at 5, or "ready or prepared to do something," *see* American Heritage, *supra*, at 68. The court is also persuaded by the rule set forth in *Ball* because the rule contemplates some kind of active conduct on the part of the plaintiff-agreeing to testify or scheduling an interview. As the Tenth Circuit has recognized, the "protected activity" prong of a prima facie case of retaliation clearly contemplates some type of active conduct on the part of the plaintiff-conduct such as

---

7. The same definition of the word "about" is found in the abridged sixth edition of Black's. *See Black's Law Dictionary* 4 (6th ed.1991). No definition appears in the seventh edition.

8. The legislative history of the FLSA sheds no light whatsoever on the intended scope of § 215(a)(3).

filing an EEOC charge; testifying in a deposition or at trial; or complaining to management. *See McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir.1996) ("[I]t is the assertion of statutory rights (*i.e.*, the advocacy of rights) by taking some action adverse to the company—whether via formal complaint, providing testimony ..., complaining to superiors ... or otherwise-that is the hallmark of protected activity."). By adopting a requirement that an employee must have actually scheduled an interview, agreed to testify, or otherwise expressed an intent to cooperate with an EEOC investigation in order to receive protection under the "about to testify" language of § 215(a)(3), the court adheres to this principle. In short, the court concludes that Ms. Harrington is entitled to protection from retaliation under the "about to testify" prong of § 215(a)(3) only if she was on the verge of testifying-that is, that her testimony was relatively certain to occur because she scheduled an interview, agreed to testify, or otherwise expressed an intent to cooperate with an EEOC investigation.

Applying this rule to the evidentiary record before the court, it is clear that Ms. Harrington was not "about to testify" with respect to Ms. Meek's charge. The record is devoid of any evidence suggesting that Ms. Harrington was actively participating or assisting in the EEOC process prior to defendant's decision to transfer her to the customer service position. It is undisputed that neither the EEOC nor Ms. Meek had contacted Ms. Harrington concerning Ms. Meek's charge at any time prior to

Ms. Harrington's transfer. Similarly, it is undisputed that Ms. Harrington had not contacted the EEOC or expressed any intent to cooperate or participate in the EEOC process at any time prior to her transfer. The record reflects only that Mr. Isaacson advised the driver managers that the EEOC "might be" contacting "some of them" about Ms. Meek's charge and that Ms. Harrington was transferred shortly thereafter. Surely an employee must be more than a mere recipient of information before he or she is engaged in protected activity within the meaning of the § 215(a)(3). In the absence of any evidence that Ms. Harrington had any contact with the EEOC about Ms. Meek's charge, expressed any intent to testify on behalf of Ms. Meek, or was otherwise asserting her rights under the FLSA prior to the time defendant transferred her to the customer service position, the court cannot conclude that she was "about to testify" within the meaning of § 215(a)(3). *See Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984) (the "assertion of statutory rights" is the triggering factor for protected status); *Ball*, 34 F.Supp.2d at 345 (granting defendant's 12(b)(6) motion where plaintiff "failed to allege that he was subpoenaed to testify or even that he was told that he would be called upon to testify, much less any statement as to when such testimony might occur"). Thus, plaintiff cannot establish the first element of its prima facie case of retaliation and summary judgment in favor of defendant is appropriate.[9]

9. Perhaps conceding the tenuousness of its argument that Ms. Harrington was "about to testify" in its investigation of Ms. Meek's charge, plaintiff contends that even if Ms. Harrington had not been about to testify, she nonetheless is entitled to protection under § 215(a)(3) simply because of her status as a female driver manager. According to plaintiff, plaintiff's status is sufficient to constitute "protected activity" because, as plaintiff argues, she may have been entitled to backpay at the conclusion of plaintiff's investigation of Ms. Meek's charge and, thus, defendant may have attempted to cut off its backpay liability

by removing Ms. Harrington from the driver manager position-the position under scrutiny in the investigation of Ms. Meek's charge. The court has not uncovered (and did not expect to uncover) any cases suggesting that membership in a particular class or subclass, in and of itself, is sufficient to constitute "protected activity" for purposes of establishing a prima facie case of retaliation. Of course, plaintiff's proposed rule contradicts the Tenth Circuit authorities set forth above-authorities demonstrating that the plaintiff must engage in some type of active conduct in order to be protected

Even assuming, however, that plaintiff's evidence is sufficient to support a prima facie case of retaliation, the court would nonetheless grant summary judgment in favor of defendant because plaintiff has not shown that defendant's proffered reasons for its decision are pretextual. *See Anderson v. Coors Brewing Company*, 181 F.3d 1171, 1180 (10th Cir. 1999) (even assuming time between plaintiff's termination and the filing of her EEOC charge is sufficient to establish causal connection for purposes of prima facie case of retaliation, plaintiff could not overcome defendant's proffered reason for terminating plaintiff's employment). As the Tenth Circuit has consistently emphasized, a plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See, e.g., id.* at 1179 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Id.* (citing *Morgan*, 108 F.3d at 1323).[10]

Defendant has come forward with two explanations for its decision to move Ms. Harrington to the customer service position. First, defendant maintains that it needed a customer service representative

from retaliation. The court, then, rejects plaintiff's argument for this reason. In any event, plaintiff's argument ignores the fact that Ms. Meek's charge was an *individual* charge of discrimination; there is no evidence that defendant, based on Ms. Meek's charge, would have incurred backpay liability for any female driver managers other than Ms. Meek.

10. Of course, as an alternative to showing that defendant's proffered reasons are pretextual, plaintiff can also survive summary judgment by coming forward with direct evidence that defendant transferred Ms. Harrington in retaliation for her alleged involvement or participation in plaintiff's investigation of Ms. Meek's charge of discrimination. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1396 (10th Cir.1997) (To avoid summary judgment after defendant meets its burden of production by articulating a legitimate nonretaliatory reason for its employment decision, plaintiff is required to produce evidence that the adverse action was in retaliation for his protected FLSA activity, either through the use of direct evidence or by showing that defendant's proffered nonretaliatory reasons for its action were pretextual). According to plaintiff, one particular comment made by Tom Frame (the person who replaced Ms. Harrington as the driver manager of the trainer-trainee fleet) to Ms. Harrington constitutes "direct evidence" of a causal connection between her alleged protected activity and defendant's employment decision. According to plaintiff's evidence, on one occasion in August 1998, Mr. Frame walked by Ms. Harrington's desk and said to her, "If you hadn't started this, then maybe I wouldn't have to be dealing with these trainees and you could still be doing it."

Such evidence does not constitute direct evidence of retaliation. According to established Tenth Circuit precedent, a "plaintiff proves discrimination by direct evidence when she presents proof of 'an existing policy which itself constitutes discrimination,'" *see Mosley v. Pena*, 100 F.3d 1515, 1519 (10th Cir.1996) (quoting *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir.1996) (quoting *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir.1990))); *York v. American Telephone & Telegraph Co.*, 95 F.3d 948, 953–54 (10th Cir.1996) (noting that where the Supreme Court has considered the *McDonnell Douglas* test inapplicable, "the employer's policy has been 'discriminatory on its face,' treating the members of the disadvantaged group differently according to the very terms of their employment."), or when she presents proof that the employer actually relied on a protected characteristic in making its employment decision (*i.e.,* statement by decisionmaker during decisional process showing discriminatory animus), *see Ramsey*, 907 F.2d at 1008 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). Moreover, as set forth in more detail in this opinion, the court does not even consider Mr. Frame's comment as circumstantial evidence of discrimination. In other words, the evidence is insufficient to permit a reasonable factfinder to draw an inference of discriminatory intent.

(because Brian Bottorff, one of defendant's employees, transferred out of a customer service position to manage a developmental fleet for defendant) and Ms. Harrington had previous experience in the customer service area. Second, defendant asserts that it needed to find a position for Tom Frame. According to defendant, placing Mr. Frame in Ms. Harrington's former position-as a driver manager for the trainer-trainee fleet-enabled defendant to utilize Mr. Frame's talent and experience by restructuring the position to include responsibility for the reorganization of defendant's recruitment, orientation and training programs for new drivers. Defendant further contends that it transferred employees "as often as needed" to "take care of the business." Defendant has satisfied its "exceedingly light" burden to provide a legitimate nonretaliatory reason for its decision to terminate plaintiff's employment. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.), *cert. denied*, 528 U.S. 814, 120 S.Ct. 50, 145 L.Ed.2d 44 (1999).

In its papers, plaintiff asserts that defendant's proffered reasons are simply not credible. In support of its argument, plaintiff first maintains that pretext is demonstrated because at the time Mr. Isaacson advised Ms. Harrington that he was moving her to the customer service position, he did not say that he was moving her to make room for Tom Frame. A review of Ms. Harrington's deposition testimony on this issue, however, reveals that Mr. Isaacson certainly made it known to Ms. Harrington that Mr. Frame would be taking her place. The relevant excerpt is as follows:

- How is it that you went to customer service?
- Jon [Isaacson] called me in the office and said he wanted me to move to customer service.
- Did he tell you why?
- No. They were going to move Brian, who was over the customers I took over, back to developmental.
- And is that Brian Bottorff?
- Yes.
- Brian Bottorff was in customer service?
- Yes.
- And they were going to move him where?
- Developmental.
- Who was going to take over the trainee fleet?
- Tom Frame.

This testimony reveals that while Mr. Isaacson may not have told Ms. Harrington that defendant needed to "make room" for Tom Frame, he at least advised Ms. Harrington of the specific changes that were taking place, including the fact that Mr. Frame would be taking over the trainee fleet. Plaintiff's first argument, then, lacks merit.[11]

Next, plaintiff makes a series of arguments that questions the wisdom of defendant's decision to transfer Ms. Harrington to the customer service position rather than another employee. For example, plaintiff contends that defendant could have assigned Tom Frame to the customer service position or transferred one of any number of male driver managers to the customer service position. According to plaintiff, these other employees had just as much experience in the customer service area as Ms. Harrington. In the same vein, plaintiff maintains that defendant could have kept Brian Bottorff in the customer

11. Along the same lines, plaintiff contends that pretext is established because Mr. Isaacson did not actually testify that Ms. Harrington was reassigned to the customer service position to make room for Tom Frame. According to plaintiff, Mr. Isaacson testified only that defendant needed a customer service representative and that Ms. Harrington had customer service experience. Mr. Isaacson's testimony, however, is consistent with Ms. Harrington's testimony. Mr. Isaacson testified that defendant needed a customer service representative, that Ms. Harrington had the requisite experience, and that Mr. Frame took over Ms. Harrington's driver manager duties.

service position and permitted Ms. Harrington to manage the developmental fleet.

These arguments misunderstand the focus of the court's inquiry in a pretext case. The court is concerned solely with whether the reasons asserted by defendant or, more specifically, by Mr. Isaacson for Ms. Harrington's transfer are a pretext for discrimination. The Tenth Circuit has repeatedly cautioned that district courts do not sit as "super-personnel departments" free to second guess the business judgment of an employer. *See, e.g., Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir.1999). In other words, the court is not concerned with whether the employer's proffered reason for its decision is unfair, unwise, or even incorrect, so long as it truly was the reason for the employment decision. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999); *see also Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 677 (7th Cir.1997) ("Arguing about the accuracy of the employer's assessment [of plaintiff's performance] is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest."). The key inquiry, then, is whether Mr. Isaacson genuinely believed that Ms. Harrington was an appropriate choice for the vacant customer service position and relied on that belief in transferring Ms. Harrington to that position. Nothing in the record suggests that defendant did not actually need a customer service representative or that Mr. Isaacson did not genuinely believe that Ms. Harrington was an appropriate person for that position. Nothing in the record suggests that Mr. Isaacson did not genuinely believe that defendant would be well served by placing Mr. Frame in Ms. Harrington's driver manager position because of Mr. Frame's skills and experience. In fact, the record reflects that defendant was able to expand the driver manager position that Mr. Frame held by giving Mr. Frame additional responsibilities concerning orientation, recruitment and training of new drivers. In short, plaintiff's opinions regarding the fairness, accuracy or wisdom of Mr. Isaacson's decision do not create a genuine issue of fact for trial.

Plaintiff also urges that an isolated comment allegedly made by Mr. Frame to Ms. Harrington supports an inference of pretext. According to plaintiff's evidence, on one occasion in August 1998, Mr. Frame walked by Ms. Harrington's desk and said to her, "If you hadn't started this, then maybe I wouldn't have to be dealing with these trainees and you could still be doing it." Although Ms. Harrington did not ask Mr. Frame what he meant, she assumes that he was referring to "the lawsuit or the claim or whatever." As an initial matter, to the extent Mr. Frame was referring to the EEOC's lawsuit or any claim made by Ms. Harrington, then the comment simply would not support an inference that defendant retaliated against Ms. Harrington for her alleged involvement in the investigation of Ms. Meek's charge of discrimination. For there is no allegation here that defendant retaliated against Ms. Harrington for any role she played in the EEOC's suit or any claim she may have made on her own behalf. The only retaliation claim asserted by plaintiff is that defendant retaliated against Ms. Harrington based on the fact that Ms. Harrington was "about to testify" regarding Ms. Meek's charge. In any event, the comment is nonetheless insufficient to create a jury issue as there is no evidence in the record (and no allegation made by plaintiff) that Mr. Frame played any part in the decision to transfer Ms. Harrington. Similarly, there is no evidence that any decisionmaker (or anyone for that matter) told Mr. Frame that Ms. Harrington was transferred because she "started" anything. In the absence of any nexus between Mr. Frame and the employment decision in question, this isolated comment cannot support an inference of pretext. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (in order to rely on discriminato-

ry comments, plaintiff must show that the comments were made by a decisionmaker, and that there was a nexus between the discriminatory statements and the employment decision); *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994) (stray remarks, unrelated to the challenged action, are "insufficient to create a jury issue").

Finally, plaintiff contends that pretext is established solely by virtue of the close temporal proximity between Ms. Harrington's protected activity and defendant's decision to transfer her. While the court has already concluded that Ms. Harrington did not engage in any protected activity whatsoever, even assuming that she was "about to testify" at the time defendant moved her to the customer service position, such evidence would not necessarily entitle plaintiff to a trial on its retaliation claim. In fact, the Tenth Circuit has expressly rejected the argument that "a showing of temporal proximity between protected activity and adverse employment action is always sufficient to survive summary judgment." *See Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1397 (10th Cir.1997). While protected conduct closely followed by adverse action may justify an inference of retaliatory motive sufficient to survive summary judgment, the Circuit has cautioned that "[e]ach case turns on its facts." *See id.* at 1398. Here, plaintiff has simply produced insufficient evidence of retaliatory motive or pretext to rebut defendant's proffered nonretaliatory reasons for transferring Ms. Harrington. *See id.* Thus, the court concludes that mere temporal proximity between Ms. Harrington's alleged protected activity and defendant's employment decision is insufficient to withstand defendant's motion for summary judgment.

Because plaintiff has failed to present sufficient evidence that Ms. Harrington engaged in activity protected by the FLSA and, in any event, because plaintiff has failed to present sufficient evidence that defendant's proffered reasons for its conduct are pretextual, summary judgment in favor of defendant on plaintiff's retaliation claim is appropriate.[12]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 58) is **granted in part and denied in part**. Specifically, the motion is granted with respect to plaintiff's retaliation claim and is granted to the extent plaintiff seeks to recover both prejudgment interest and liquidated damages on its EPA claim. The motion is otherwise denied.

**IT IS SO ORDERED.**

---

12. Defendant also moves for summary judgment on plaintiff's claim for punitive damages under § 215(a)(3), contending that punitive damages are not available under the FLSA's anti-retaliation provision. The Tenth Circuit has not addressed this issue and the Circuit Courts of Appeal that have addressed the issue are split as to how that issue should be resolved. *Compare Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 933–39 (11th Cir. 2000) (punitive damages are not available for a violation of the FLSA's anti-retaliation provision) *with Travis v. Gary Community Mental Health Center, Inc.,* 921 F.2d 108, 111–12 (7th Cir.1990) (punitive damages are available for a violation of the FLSA's anti-retaliation provision). In any event, because the court concludes that summary judgment is warranted on the merits of plaintiff's retaliation claim, it need not decide this issue today.